HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MARYGRACE A. CONEFF, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> AT&T CORPORATION, *et al.*, <br><br> Defendants. <br><br> This Document Relates to All Actions | Consolidated Case No. C06-0944 RSM <br><br> DEFENDANTS' MOTION FOR PROTECTIVE ORDER <br><br> Noted For Consideration: <br> **December 18, 2006** <br> **(Oral Argument Requested)** |

DEFENDANTS' MOTION FOR
PROTECTIVE ORDER
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900;
Seattle, WA 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

## TABLE OF CONTENTS

Page

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    A.    The Requested Deposition Of Rule 30(b)(6) Witnesses On The Topics That Plaintiffs Have Designated Is Impermissible Because Those Topics Pertain To The Underlying Merits Of Plaintiffs' Claims ................................................................ 3

    B.    Plaintiffs' Remaining Discovery Is Inappropriate Because It Is Legally Irrelevant And Is Being Used Merely To Engage In A Fishing Expedition .................................. 6

CONCLUSION ................................................................................................................... 12

DEFENDANTS' MOTION FOR
PROTECTIVE ORDER - i
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900;
Seattle, WA 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

Pursuant to Federal Rule of Civil Procedure 26(c), defendants Cingular Wireless LLC, New Cingular Wireless Services, Inc. (collectively, "Cingular"), and AT&T Wireless Services, Inc. ("AWS") respectfully move this Court for a protective order (1) barring plaintiffs from taking the depositions of Cynthia Hennessy and of multiple Rule 30(b)(6) witnesses and (2) staying Cingular's obligation to respond further to plaintiffs' discovery requests pending the resolution of defendants' motion to compel arbitration.[1]

There is good cause for a protective order. Defendants have agreed to provide the requested discovery to the extent it arguably relates to the issues raised by the pending Motion. Most of the remaining discovery requests, if relevant at all, seek information related to the underlying merits of the claims in this lawsuit. But merits-based discovery is premature: The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, precludes merits discovery while a motion to compel arbitration is pending. Furthermore, because the FAA envisions "an expeditious and summary hearing, with only restricted inquiry into factual issues" (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)), even discovery that purports to relate to arbitrability is impermissible if it is tangential, burdensome, and more in the nature of a fishing expedition than a targeted effort to shed light on the enforceability issue. That is the case here. Plaintiffs' discovery requests range far and wide. Plaintiffs have offered no reason why such far-reaching and burdensome discovery is necessary to resolve the limited issue of whether their agreements to arbitrate are unconscionable. Accordingly, this Court should bar all of the disputed discovery requests.[2]

## BACKGROUND

In this putative nationwide class action against Cingular, plaintiffs allege that, after Cingular merged with AWS and took over its operations in October 2004, Cingular intentionally degraded the AWS wireless network to which they subscribed in order to induce them either to

---

[1] Counsel for Cingular certify that they have in good faith attempted to confer with plaintiffs' counsel to resolve this discovery dispute. Declaration of William Cronin ("Cronin Dec."), ¶ 5.

[2] Many of the discovery requests are directed at AT&T Corporation. We do not represent AT&T Corporation, which the plaintiffs have erroneously named as a defendant. We have construed all of plaintiffs' discovery requests as applying to Cingular or AWS.

DEFENDANTS' MOTION FOR
PROTECTIVE ORDER - 1
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900;
Seattle, WA 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

incur various expenses to switch to Cingular's network or to pay an early-termination fee to terminate service. Second Consol. Am. Compl. ("SCAC") ¶¶ 1, 36. Plaintiffs allege claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violations of the consumer protection acts of 14 states and of the Federal Communications Act.

Because each plaintiff agreed to resolve his or her disputes with Cingular or AWS either in individual arbitration or small claims court, Cingular moved to compel arbitration. In the meantime, Cingular voluntarily provided plaintiffs' counsel with not only the terms and conditions of service to which each plaintiff agreed, but also a copy of each version of the terms and conditions of service that AWS has packaged with its telephones since July 1999. Cronin Dec., ¶ 6, Ex. C. Cingular has also agreed to produce copies of all versions of the terms of service that it has employed since the October 2004 merger. Id.

Soon after Cingular filed its motion to compel arbitration, plaintiffs served a number of written discovery requests, including 15 interrogatories, 34 document requests, and 2 requests for admission. See Cronin Dec., Exs. A and B. Plaintiffs also have requested at least 13 depositions: one for each person who submitted a declaration in support of Cingular's arbitration motion—including Cingular's associate general counsel for litigation, Neal Berinhout; a Cingular senior litigation counsel, Cynthia Hennessy; ten expert witnesses who submitted declarations in support of Cingular's motion; and numerous Rule 30(b)(6) witnesses to testify on merits-related issues.

Counsel for the parties met and conferred about plaintiffs' discovery requests on November 30, 2006. Cronin Dec., ¶ 5. Cingular agreed to respond to the plaintiffs' Requests for Admission, to Interrogatories 1-4 and 11–12, 14–15, and to Document Requests 28, 31, and 33–34. Id. ¶ 6 & Ex. C. Cingular also agreed to make Mr. Berinhout available for a deposition and to cooperate in scheduling depositions of all of its expert witnesses. Id.[3] The parties could not agree, however, as to the remainder of plaintiffs' discovery requests. Id. Thus, Cingular now

---

[3] Because all of the expert witnesses are non-parties, Cingular cannot simply make them available; rather, plaintiffs must subpoena them pursuant to Federal Rule of Civil Procedure 45.

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 2
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

moves for a protective order.

## ARGUMENT

Federal Rule of Civil Procedure 26(c) authorizes this Court to issue a protective order to relieve Cingular of the "undue burden" of submitting to discovery that plaintiffs are not legally permitted to obtain. Because the vast majority of plaintiffs' discovery requests flout the limitations on discovery that the FAA imposes, this Court should issue a protective order.[4]

There is a strong federal policy favoring the enforcement of arbitration agreements. *E.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The purpose of these agreements is to reduce the costs of dispute resolution by substituting speedy and informal procedures for the expensive and time-consuming machinery of litigation. To effectuate these policies, discovery in connection with a pending motion to compel arbitration under the FAA is strictly limited. As the Supreme Court has explained, the FAA "call[s] for an expeditious and summary hearing, with only ***restricted inquiry*** into factual issues." *Moses H. Cone*, 460 U.S. at 22 (emphasis added). Otherwise, the expense of litigating the enforceability of the arbitration agreement threatens to eliminate the "simplicity, informality, and expedition" of arbitration (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) and therefore to undermine the point of agreeing to arbitrate in the first place. Thus, the "FAA provides for discovery * * * in connection with a motion to compel arbitration ***only if*** 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4) (emphasis added).

By requesting discovery that relates to the underlying merits or that is otherwise unnecessary to resolving the arbitrability of their disputes, plaintiffs threaten to frustrate the summary procedures for resolving a motion to compel arbitration. Plaintiffs should accordingly be precluded from pursuing their premature and irrelevant discovery requests.

---

[4] By filing this motion, Cingular does not waive any other objections that it might have to plaintiffs' discovery requests. Cingular will formally serve its additional objections at the appropriate time.

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 3
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

### A. The Requested Deposition Of Rule 30(b)(6) Witnesses On The Topics That Plaintiffs Have Designated Is Impermissible Because Those Topics Pertain To The Underlying Merits Of Plaintiffs' Claims.

"In a proceeding to compel arbitration, no discovery into the underlying grievance is ordinarily permitted." *Levin v. Ripple Twist Mills, Inc.*, 416 F. Supp. 876, 880 (E.D. Pa. 1976), *appeal dismissed*, 549 F.2d 795 (3d Cir. 1977); *see also, e.g., Simula*, 175 F.3d at 726 (affirming refusal to permit pre-arbitration discovery into issues that are "questions for the arbitrator" rather than questions of arbitrability). As the Washington Supreme Court has explained, "[d]iscovery on the subject matter of the dispute to be arbitrated generally has been denied." *Balfour, Guthrie & Co. v. Commercial Metals Co.*, 607 P.2d 856, 858 (Wash. 1980) (quoting 7 Moore *et al.*, MOORE'S FEDERAL PRACTICE § 81.05(7), at 81–82 (2d ed. 1979)); *see also In re MHI P'ship, Ltd.*, 7 S.W.3d 918, 923 (Tex. Ct. App. 1999) ("Delaying a decision on the merits of arbitrability until *after* discovery substantially defeats the policy behind [the Texas Arbitration Act's] abbreviated procedure, and it violates [that Act's] mandate to decide the issues summarily.") (emphasis in original). A "motion to compel arbitration is *not* a motion for summary judgment," where a party is entitled to full discovery, but rather is "akin to a challenge to jurisdiction or venue." *Cole v. Halliburton Co.*, 2000 WL 1531614, at *2 (W.D. Okla. Sept. 6, 2000) (emphasis added and internal quotation marks omitted). This is so because "[o]nce arbitration proceedings are validly invoked the arbitrators are the ones who should determine the nature and scope of the whole gamut of discovery. They are the ones who are to decide what facts, in what form, are necessary for their decisional process." *Balfour*, 607 P.2d at 858.

Plaintiffs have requested Rule 30(b)(6) depositions—but all of the topics they have specified relate solely to the merits of this dispute. Specifically, plaintiffs have requested that Rule 30(b)(6) witnesses be prepared to testify on the following topics:

- The business organization and operations of AWS and the nature of "all facilities, operations, and offices" of all of the defendants in Washington state, both before and after the merger (areas of knowledge 1, 5, 8, and 9);

- The relationship between AWS and the other defendants before and after the merger and the merger negotiations and documentation (areas 2 and 7);

- AWS's marketing, including disclosures related to the merger, and the manner in which

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 4
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

decisions were made about how AWS's network would be operated and maintained after the merger (areas 3 and 6); and

- The development of AWS's terms and conditions of service, including the existence and nature of any studies on the nature and type of language used, and how the terms and conditions were to be presented and explained to customers (areas 4, 10, 11, and 12).

All of these topics are focused on the merits. Indeed, only the last topic is even arguably connected to arbitrability in that it relates to customers' wireless service agreements. But insofar as plaintiffs intend to raise any issue related to the wireless service agreements as a whole, that issue would be for an arbitrator, not the Court to decide. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).[5] It follows that discovery relating to such an issue should be reserved for the arbitrator to supervise. In any event, Cingular has already provided copies of all of AWS's terms and conditions of service containing arbitration provisions. In addition, it will soon be sending plaintiffs copies of all of Cingular's terms and conditions of service. Because those documents speak for themselves, a deposition of a Rule 30(b)(6) witness is unnecessary. *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 828 (S.D. Miss. 2001) (refusing to grant pre-arbitration discovery because the information sought "can be gleaned from the documents themselves"), *aff'd*, 34 F. App'x 964 (5th Cir. 2002).

These wide-ranging topics also make clear that plaintiffs intend to conduct an unrestrained deposition that sweeps far beyond "gateway" questions of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). This Court therefore should issue a protective order forbidding plaintiffs from taking the requested deposition of Rule 30(b)(6) witnesses on the specified topics or from seeking any other discovery on any merits-related issues as beyond the scope of arbitrability.

Plaintiffs took the position during the "meet and confer" that defendants' "contacts" in Washington are relevant to determining which states' laws govern their unconscionability challenge to their arbitration agreements. They are mistaken; in each case, the agreement itself determines which state's law applies. The Cingular contracts at issue here specify that disputes

---

[5] *Accord JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004); *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 492 n.3 (6th Cir. 2001).

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 5
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

will be governed by the law of the state of the customer's "billing address"; the AWS contracts require application of the law of the state of the customer's "[n]umber" or "[i]dentifier"—*i.e.*, wireless phone number. *See* Arb. Motion, at 12 n.10. Under Washington law (which governs here (*see Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003))), such choice-of law provisions are generally enforced. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 641 (9th Cir. 1988); *McGill v. Hill*, 644 P.2d 680, 683 (Wash. Ct. App. 1982). Simply put, defendants' contacts with Washington have no bearing on the arbitrability of plaintiffs' disputes.

### B. Plaintiffs' Remaining Discovery Is Inappropriate Because It Is Legally Irrelevant And Is Being Used Merely To Engage In A Fishing Expedition.

Plaintiffs contend the remaining disputed discovery requests relate to arbitrability. Even if this were so, they are so far ranging and unrelated to anything raised in Cingular's motion as to compel the conclusion that plaintiffs are engaged in a fishing expedition. The case law makes clear that discovery on arbitrability must be narrowly tailored to issue raised by the Motion. Plaintiffs may not engage in far-ranging discovery on hypothetical issues in the mere hope that they will unearth something useful to their claims.

1. Plaintiffs seek to depose Cynthia Hennessy, a Cingular senior litigation counsel who submitted a declaration in support of Cingular's arbitration motion. But Ms. Hennessy's declaration chiefly authenticates the terms and conditions of Cingular and AWS wireless service and describes Cingular's records concerning the individual plaintiffs. Cingular already has provided copies of all of the terms and conditions that relate to plaintiffs' arbitration agreements, and, in response to Document Request 28, will provide copies of the account notes on which Ms. Hennessy's declaration relies. These documents speak for themselves. Accordingly, it is unnecessary and unduly burdensome to require Ms. Hennessy to appear for a deposition.

That is especially so because plaintiffs allege in their complaint that they entered into contracts with AWS that contain arbitration provisions. SCAC ¶¶ 43, 68–75. These allegations constitute judicial admissions that are binding against plaintiffs. *See, e.g., Creative Sec. Corp. v. Bear Stearns & Co.*, 671 F. Supp. 961, 963 n.2 (S.D.N.Y. 1987) (explaining that allegations in

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 6
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

complaint that plaintiff maintained an account "pursuant to a Customer Agreement[] constitute[] a weighty admission" supporting enforcement of the arbitration provision in that agreement), *aff'd*, 847 F.2d 834 (2d Cir. 1988) (table).[6] Allowing plaintiffs to engage in wide-ranging discovery in the blind hope that they will unearth some ground for attacking an arbitration provision flies in the face of the FAA's policy favoring the "expeditious and summary hearing" of a motion to compel arbitration. *Moses H. Cone*, 460 U.S. at 22.

There is no reason to believe that taking Ms. Hennessy's deposition will lead to the discovery of any information relevant to plaintiffs' anticipated argument that Cingular's and AWS's arbitration provisions are unconscionable. Indeed—as the laws of the several states at issue make clear—that issue is a ***legal*** matter for this Court to resolve. *See, e.g., Marin Storage & Trucking v. Benco Contracting & Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 655 (Cal. Ct. App. 2001) (unconscionability "is ultimately a question of law for the court"); *Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co.*, 543 A.2d 1020, 1026 n.9 (N.J. Super. Ct. 1988) (similar), *aff'd*, 571 A.2d 294 (N.J. 1990); *Rottinghaus v. Howell*, 666 P.2d 899, 903 (Wash. Ct. App. 1983) (similar). Taking Ms. Hennessy's deposition will not aid plaintiffs' arguments that their arbitration agreements are unconscionable. Instead, a deposition would serve only to harass Ms. Hennessy and to impose unwarranted costs on Cingular.

2.   As noted earlier, Cingular has agreed to respond to plaintiffs' Interrogatories 1–4, 11–12, and 14–15. But the remainder of plaintiffs' interrogatories are inappropriate because they are not reasonably calculated to lead to the discovery of admissible evidence concerning the arbitrability of plaintiffs' disputes.

   a.   Interrogatories 6–9 request that Cingular identify every person responsible

---

[6] *See also, e.g., Coates*, 125 F. Supp. 2d at 828 (it simply "does not follow from the fact that [the party resisting arbitration] takes the position that he did not agree to arbitration that discovery is needed to determine whether the ostensible arbitration agreement is enforceable"); *Gates v. Veravest Inv., Inc.*, 2004 WL 1173145, at *10 (D. Or. May 25, 2004) (refusing request [of party opposing arbitration] to conduct discovery to "determine his relationship with the defendants and whether he is required to arbitrate with them" because that party admittedly signed the arbitration agreements that defendants produced and did not argue waiver, and "[t]herefore, the FAA does not permit further discovery"); *Gold v. Deutsche A.G.*, 1998 WL 126058, at *3 (S.D.N.Y. Mar. 19, 1998) (compelling arbitration without ordering discovery because no factual allegations suggested that the agreement was unenforceable), *appeal dismissed*, 199 F.3d 1322 (2d Cir. 1999)

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 7
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

for "designing," "modifying," or "altering" Cingular's "Wireless Service Guides" and AWS's "Welcome Guide[s]" during the past seven years. Interrogatory 13 asks Cingular to "outline in detail the reason(s) for the October 2006 arbitration clause." These interrogatories are flawed for multiple reasons. First, most are overbroad: The design of and changes to Cingular's and AWS's terms and conditions are wholly irrelevant as to all provisions other than the arbitration provisions. Second, Cingular has agreed to provide plaintiffs with all of Cingular's and AWS's terms of service that contain an arbitration provision. Those documents speak for themselves.

Third, and relatedly, the interrogatories appear to be aimed at identifying individuals for a second round of depositions. Plaintiffs evidently intend to ask these individuals about the subjective intent underlying various changes in the WSAs, Welcome Guides, and the arbitration provisions. But no applicable state contract law makes the employees' intent relevant to the arbitrability inquiry. *See, e.g.*, *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 805 (Cal. Ct. App. 2005) (substantive unconscionability probes "whether a contractual provision reallocates risks in an ***objectively*** unreasonable or unexpected manner") (internal quotation marks omitted and emphasis added). Unconscionability scrutinizes the fairness of contract provisions, a process that involves contract interpretation. *E.g.*, *Kinney v. United Healthcare Servs., Inc.*, 83 Cal. Rptr. 2d 348, 353 (Cal. Ct. App. 1999). In interpreting a contract, "[a]lthough the intent of the parties determines the meaning of the contract, the relevant intent is 'objective'—that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." *Shaw v. Regents of the Univ. of California*, 67 Cal. Rptr. 2d 850, 856 (Cal. Ct. App. 1997) (citation omitted); *accord, e.g.*, *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (intent is determined "by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties").

   **b.**   Interrogatories 5 and 10 ask Cingular to identify every person "responsible for establishing [each defendant's] corporate policy regarding [its] arbitration clauses" for the last seven years and every person who "participated in the decision(s) to change the arbitration clause in October 2006." In addition to creating an undue burden, these interrogatories

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 8
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

obviously invade the attorney-client privilege and seek information protected by the attorney work product doctrine. They are also unnecessary, because Cingular has agreed to make Neal Berinhout, its associate general counsel for litigation, available for a deposition.[7]

       **3.**     With the exception of Document Requests 28, 31, and 33–34, all of plaintiffs' document requests are likewise inappropriate: For the most part they are overbroad and unduly burdensome, in that they request a vast number of documents that are entirely unnecessary to resolving Cingular's motion to compel arbitration.[8] As such, they constitute an impermissible fishing expedition that is at odds with the "restricted inquiry into factual issues" (*Moses H. Cone*, 460 U.S. at 22) authorized by the FAA.

       **a.**     Requests 7–11, 14, and 23 seek "any and all documents" that relate to modifications that AWS or Cingular made to their arbitration provisions over the last seven years. Request 29 seeks documents "utilized to prepare" or "draft" the 2006 arbitration provision. These document requests are unnecessary to determine what changes were made, because Cingular has provided (or will provide) plaintiffs with all relevant versions of AWS's and Cingular's terms and conditions that contain arbitration provisions. In reality, the requests are directed at documents reflecting internal deliberations and reasoning about why Cingular and AWS changed their arbitration provisions over time. Such requests clearly impinge upon the attorney-client privilege and the protection afforded by the work-product doctrine. Moreover, they are irrelevant to the unconscionability issue, which calls for an objective inquiry.

       **b.**     Request 13, which seeks all documents "reflecting the policies and procedures regarding the placement of the arbitration notice at the front of the Wireless Service Contract," is likewise inappropriate. The terms and conditions documents themselves reveal that Cingular and AWS highlighted their respective arbitration provisions. Again, what Request 13 actually seeks—the reason contracts were drafted the way they were—is information protected by the attorney-client privilege and that is irrelevant to the objective unconscionability inquiry.

---

[7] Of course, Cingular's reserves the right to invoke the attorney-client privilege, attorney work product doctrine, and all other applicable privileges and doctrines.

[8] Request 28 seeks "customer service representatives' notes of any and all conversations" with plaintiffs. Cingular will produce copies of all of the named plaintiffs' account notes in its possession.

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 9
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

     **c.**    Request 12, which asks for all documents concerning "your decision to provide consumers with a Spanish version of the Wireless Service Contract," is likewise inappropriate. Plaintiffs have not articulated any reason why documents relating to Spanish-language versions of Cingular's or AWS's terms and conditions have any bearing on the arbitrability of their disputes. Plaintiffs' request for every document concerning decisions to provide contracts in Spanish is unduly burdensome and irrelevant to arbitrability.

     **d.**    Requests 5 and 18 call for all documents relating to how an arbitrator is selected and where an arbitration takes place. But the relevant arbitration provisions and incorporated rules of the American Arbitration Association themselves answer these questions. Accordingly, it is both unnecessary and unduly burdensome to require Cingular to produce "all" documents that relate to the selection of arbitrators and location of an arbitration.

     **e.**    Requests 15, 17, 19, 21, 22, and 30 also are impermissible. These requests seek the number of arbitrations in the last seven years; the identity of the arbitrators who presided over those arbitrations; all "arbitration documents" from those proceedings; all documents that "evidence * * * all arbitrations" and arbitral "hearings requested" or "conducted" under the 2006 arbitration provision; and all documents relating to the involvement of a former AWS and Cingular paralegal (who no longer works for the company) in "the arbitration process." This information is not needed to shed light on how arbitration works under the Cingular and AWS provisions. As explained above, the AAA rules and the arbitration provisions themselves already explain how the arbitration process would function. *See Coates*, 125 F. Supp. 2d at 828 (refusing to grant discovery "on the subject of '[w]hat the arbitration entails—its costs, its procedures, etc.'" because the arbitration agreement and the arbitration provider's rules "set forth the procedures and rules" that would apply). Turning over these documents would infringe not only Cingular's attorney-client and attorney work-product privileges, but also invade the privacy of the customers involved in those arbitrations. Such broad-based document requests have no place in the context of a motion to compel arbitration—at least not without a showing by plaintiffs that they are needed.

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 10
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

      **f.**    Request 3, which asks for all documents pertaining to "the procedure in which the Wireless Service Guides were provided to customers," is inappropriate. Cingular has already explained how its (and AWS's) terms and conditions were provided to customers in its arbitration motion and Cynthia Hennessy's supporting declaration. As we discussed above (at 6–7), plaintiffs allege in their complaint that they receive wireless service under contracts containing arbitration agreements. Before plaintiffs are permitted to undertake burdensome discovery on the manner in which their arbitration agreements were formed, they should be required to come forward with competent evidence that they did not agree to arbitration. It is pointless—and, indeed, detrimental to the policies favoring arbitration—to allow discovery to go forward on this issue when (as yet) no factual dispute about contract formation exists.

      **g.**    Request 20 seeks all documents that "evidence a contract that was rewritten at a customer's request." To the extent that this request relates to customers' arbitration agreements with Cingular or AWS, it is both unduly burdensome and unnecessary. As Cingular will explain in response to Request for Admission 2, generally speaking Cingular would not accept a customer's request to revise or modify an arbitration provision; nor would AWS do so. Though Cingular is not aware of any of its employees or agents having deviated from this policy, it could not respond to this document request without examining the account records of every one of its millions of current and former customers. To the extent that this request relates to terms and conditions other than the arbitration provision, it constitutes a premature (and impermissible) inquiry into the merits of the litigation.

      **h.**    Requests 1, 2, 4, and 16 call for all documents describing the "corporate policy and procedures" over a seven-year period for fielding customer complaints under an arbitration provision, for training customer care representatives to advise customers of arbitration provisions, and for handling "intake of arbitration demands." These requests are likewise inappropriate: Plaintiffs have not identified any reason why these documents are relevant to the arbitrability of *their* disputes. These plaintiffs can testify about their interactions with Cingular and AWS customer service representatives, and Cingular will produce the account notes for each

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 11
Consolidated Case No. C06-0944 RSM

plaintiff. Moreover, these plaintiffs did not complain under their arbitration agreements or make arbitration demands. How Cingular or AWS has handled the complaints and arbitration demands of other customers is not relevant to whether *these* plaintiffs are obliged to arbitrate.

        i.      Request 6 targets documents pertaining to the existence and results of "any study or testing of consumer reactions to arbitration clauses." Cingular is not aware of any such studies or tests. But even if they did exist, they would be irrelevant. Whether a contract provision is enforceable involves an objective, not a subjective, inquiry. *See, e.g., A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Cal. Ct. App. 1982). Thus, any survey of "consumer reactions" necessarily lacks bearing on whether plaintiffs' disputes are arbitrable.

        j.      Finally, Requests 24–27 and 32 call for all "information" and "documents" "supporting" or "related to Cingular's claim" that arbitration provisions and class-arbitration waivers lead to lower costs and prices for consumers and that "a class action resolution of this matter" would not instead lead to lower costs and prices. As Cingular explained in its letter to plaintiffs, it is a simple matter of economics that, in a competitive market, anything that reduces costs to the producer will result in a price reduction for the consumer. Cingular has relied on the authorities cited in its motion to compel arbitration in support of this basic economic principle. Cronin Dec., Ex. C, at 4. Cingular will again provide citations to these authorities in response to Interrogatories 11 and 12. Plaintiffs' document request goes beyond what Cingular actually relied on by requesting all information and documents that support this economic principle. That request is unduly burdensome.

## CONCLUSION

The Court should enter a protective order barring plaintiffs from taking the depositions of Rule 30(b)(6) witnesses on the requested topics and of Cynthia Hennessy, and from otherwise continuing to seek discovery on the merits or on irrelevant matters until Cingular's motion to compel arbitration is resolved. The protective order should relieve Cingular from responding to interrogatories 5–10 and 13 and document requests 1–27, 30, and 32.

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 12
Consolidated Case No. C06-0944 RSM

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

| | |
|---|---|
| 1  DATED: December 8, 2006 | CORR CRONIN MICHELSON<br>BAUMGARDNER & PREECE, LLP |
| 2 | |
| 3 | By: /s/ William F Cronin |
| 4 | William Cronin, WSBA #8667<br>Attorneys for Defendants |
| 5 | CINGULAR WIRELESS LLC, NEW<br>CINGULAR WIRELESS SERVICES, INC.,<br>AND AT&T WIRELESS SERVICES, INC. |
| 6  *Of Counsel* | |
|    KIPLING LAW GROUP PLLC | MAYER, BROWN, ROWE & MAW LLP |
| 7  Michael E. Kipling, WSBA #7677 | Evan M. Tager (*pro hac vice*) |
|    315 Fifth Avenue South, Suite 1000 | Archis A. Parasharami (*pro hac vice*) |
| 8  Seattle, WA  98104 | 1909 K Street, N.W. |
|    Tel:  206-676-7000 / Fax:  206-676-7001 | Washington, DC 20006 |
| 9 | Tel: 202-263-3000 / Fax:  202-263-3300 |

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 13
Consolidated Case No. C06-0944 RSM

# CERTIFICATE OF SERVICE

The undersigned declares as follows:

1. I am employed at Corr Cronin Michelson Baumgardner & Preece LLP, attorneys for the Defendants herein.

2. On December 8, 2006, I certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will then send notification of such filing to the following:

Paul L. Stritmatter
Kevin Coluccio
Stritmatter Kessler Whelan Coluccio
200 Second Ave. W.
Seattle, WA 98119
kc@skwwc.com
pauls@skwwc.com

John W. Hathaway
John W. Hathaway, PLLC
4600 Bank of American Tower
701 Fifth Avenue
Seattle, WA 98104
jhathaway@seanet.com

John R. Connelly, Jr.
Lincoln Beauregard
Law Offices of John R. Connelly, Jr.
2301 North 30th
Tacoma, WA 98403
jconnelly@connelly-law.com
lincolnb@connelly-law.com

Jeffrey P. Foote
Ronald F. Webster
Foote Webster
1515 S.W. Fifth Avenue, Suite 808
Portland, OR 97201
jfoote@footelaw.com
rwebster@footelaw.com

Stephen L. Bulzomi
Messina Bulzomi Christensen
5316 Orchard Street West
University Place, WA 98467-3633
sbulzomi@messinalaw.com

Stephen M. Garcia
Sarina M. Hinson
The Garcia Law Firm
One World Trade Center, Suite 1950
Long Beach, CA 90831
sgarcia@lawgarcia.com
shinson@lawgarcia.com

Karl P. Barth
Lovell Mitchell & Barth, LLP
11542 N.E. 21st St.
Bellevue, WA 98004
kbarth@lmbllp.com

William M. Sweetnam
Freed & Weiss LLC
111 W. Washington Street, Suite 1331
Chicago, IL 60602
bills@freedweiss.com

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 14
Consolidated Case No. C06-0944 RSM

| | |
|---|---|
| Harvey Rosenfield<br>Pamela Pressley<br>Foundation for Taxpayer and Consumer Rights<br>1750 Ocean Park Blvd., Suite 200<br>Santa Monica, CA 90405<br>Harvey@consumerwatchdog.org<br>pam@consumerwatchdog.org | Bruce L. Simon<br>Esther L. Klisura<br>Cotchett, Pitre, Simon & McCarthy<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>bsimon@cpsmlaw.com<br>eklisura@cpsmlaw.com |
| Richard J. Burke<br>The Lakin Law Firm, P.C.<br>300 Evans Avenue, P.O. Box 229<br>Wood River, IL 62095<br>richardb@lakinlaw.com | Michael E. Kipling<br>Kipling Law Group PLLC<br>3601 Fremont Avenue N., Suite 414<br>Seattle, WA 98103<br>Email:kipling@kiplinglawgroup.com |
| Evan M. Tager<br>Archis Parasharami<br>Mayer Brown Rowe & Maw<br>1901 K. Street, N.W.<br>Washington, D.C. 20006<br>Email: etager@mayerbrownrowe.com<br>           aparasharami@mayerbrownrowe.com | Paul Bland<br>TLPJ Foundation<br>1825 K Street N.W.<br>Washington, D.C. 20006 |

Leslie Bailey
Trial Lawyers for Public Justice
555 12th Street, Suite 1620
Oakland, CA 94607

I hereby certify that I have mailed by U.S. Postal Service the document to the following non CM/ECF participants:

N/A

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this __8th__ day of December, 2006, at Seattle, Washington.

_____
Joyce Abraham

DEFENDANTS' MOTION
FOR PROTECTIVE ORDER - 15
Consolidated Case No. C06-0944 RSM