1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CONEFF, et al.,

          Plaintiffs,

     v.

AT&T CORP., et al.,

          Defendants.

Case No. C06-0944 RSM

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT AND TO DISMISS ACTION**

Noted for Consideration: March 11, 2009

**(Oral Argument Requested)**

REPLY IN SUPPORT OF DEFENDANTS'
AMENDED MOTION TO COMPEL ARBITRATION
(C06-0944 RSM)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

I.    THE LAW OF THE PLAINTIFFS' HOME STATES GOVERNS PLAINTIFFS' CHALLENGES TO THEIR AGREEMENTS TO ARBITRATE................................... 1

   A.    Plaintiffs' Local Law Would Apply Even Without A Choice-Of-Law Clause............................................................................................................ 2

   B.    Washington Has Neither A Fundamental Public Policy Nor A Greater Interest Favoring Application Of Its Law To Out-Of-State Plaintiffs.................. 3

II.    PLAINTIFFS' AGREEMENTS TO ARBITRATE ON AN INDIVIDUAL BASIS ARE ENFORCEABLE UNDER THE LAW OF THEIR HOME STATES ..................... 5

   A.    ATTM's 2006 Arbitration Provision Governs This Dispute ................................ 6

   B.    The Agreements Of The Washington Plaintiffs Are Fully Enforceable................ 7

      1.    ATTM's 2006 Arbitration Provision Is Not Substantively Unconscionable Under Washington Law .................................................. 7

         a.    Plaintiffs mischaracterize *Scott* as a *per se* ban on agreements to arbitrate on an individual basis............................... 7

         b.    ATTM's 2006 provision encourages Washington consumers to resolve their claims in arbitration ........................... 8

         c.    ATTM's dispute-resolution system is not an inferior substitute for class actions .......................................................... 12

      2.    The Washington Plaintiffs' Arbitration Agreements Are Not Procedurally Unconscionable ................................................................... 14

   C.    The Arbitration Agreements Are Enforceable Under The Laws Of The Eight Other States ............................................................................................ 15

      1.    Alabama ........................................................................................... 16

      2.    Arizona............................................................................................. 16

      3.    California .......................................................................................... 17

      4.    Florida .............................................................................................. 18

      5.    Illinois .............................................................................................. 18

REPLY IN SUPPORT OF DEFENDANTS'
AMENDED MOTION TO COMPEL ARBITRATION
(C06-0944 RSM)
Page i

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

6.    Missouri ............................................................................... 19

7.    New Jersey .......................................................................... 20

8.    Virginia ............................................................................... 20

III.    THE FAA WOULD PREEMPT ANY STATE-LAW RULE THAT WOULD DEEM ATTM'S 2006 ARBITRATION CLAUSE UNCONSCIONABLE ................... 20

A.    Express Preemption ........................................................................ 20

B.    Conflict Preemption ........................................................................ 22

Conclusion ................................................................................................. 23

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abrams v. Camera Warehouse, Inc.*,
  496 N.Y.S.2d 659 (Sup. Ct. 1985) ............................................................... 5

5

6

*Abrams v. DeFelice*,
  77 B.R. 376 (D. Conn. Bankr. 1987) ............................................................. 5

7

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995) .................................................................................. 13

8

9

*Am. Software, Inc. v. Ali*,
  54 Cal. Rptr. 2d 477 (Ct. App. 1996) ............................................................ 7

10

11

*Badie v. Bank of Am.*,
  79 Cal. Rptr. 2d 273 (Ct. App. 1998) ...................................................... 6, 17

12

*Bass v. Carmax Auto Superstores, Inc.*,
  2008 WL 2705506 (W.D. Mo. Jul. 9, 2008) ............................................... 20

13

14

*Bilbrey v. Cingular Wireless, LLC*,
  164 P.3d 131 (Okla. 2007) ........................................................................... 6

15

16

*Blitz v. AT&T Wireless Servs., Inc.*,
  2005 WL 6177327 (Mo. Cir. Ct. Nov. 28, 2005) ....................................... 19

17

*Blue Cross Blue Shield v. Rigas*,
  923 So. 2d 1077 (Ala. 2005) ...................................................................... 16

18

19

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ..................................................................................... 5

20

21

*Bowers v. Transamerica Title Ins. Co.*,
  675 P.2d 193 (Wash. 1983) ........................................................................ 11

22

*Boyes v. Greenwich Boat Works, Inc.*,
  27 F. Supp. 2d 543 (D.N.J. 1998) ................................................................. 5

23

24

*Brewer v. Dodson Aviation*,
  447 F. Supp. 2d 1166 (W.D. Wash. 2006) ..................................................... 3

25

*Carbajal v. H & R Block Tax Servs., Inc.*,
  372 F.3d 903 (7th Cir. 2004) ...................................................................... 21

26

27

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page iii

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Carideo v. Dell, Inc.*,
   520 F. Supp. 2d 1241 (W.D. Wash. 2007) ................................................................ *passim*

*Carnegie v. H&R Block, Inc.*,
   687 N.Y.S.2d 528 (Sup. Ct. 1999) ........................................................................6

*Cline v. H.E. Butt Grocery Co.*,
   79 F. Supp. 2d 730 (S.D. Tex. 1999) ....................................................................12

*Coady v. Cross Country Bank*,
   729 N.W.2d 732 (Wis. Ct. App. 2007) ...................................................................4

*Cooper v. QC Fin. Servs., Inc.*,
   503 F. Supp. 2d 1266 (D. Ariz. 2007) ..................................................................16

*Copeland v. Marshall*,
   641 F.2d 880 (D.C. Cir. 1980) ...........................................................................11

*Cox v. Lewiston Grain Growers, Inc.*,
   936 P.2d 1191 (Wash. Ct. App. 1997) ....................................................................4

*Crandall v. AT&T Mobility, LLC*,
   2008 WL 2796752 (S.D. Ill. July 18, 2008) ............................................................19

*Cruz v. Cingular Wireless LLC*,
   2008 WL 4279690 (M.D. Fla. Sept. 15, 2008) ...............................................10, 12, 18

*Dale v. Comcast Corp.*,
   498 F.3d 1216 (11th Cir. 2007) ...........................................................................3

*Davidson v. Cingular Wireless LLC*,
   2007 WL 896349 (E.D. Ark. Mar. 23, 2007) ............................................................6

*Davis v. Dell, Inc.*,
   2007 WL 4623030 (D.N.J. Dec. 28, 2007) .............................................................20

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
   968 P.2d 539 (Cal. 1999) .................................................................................5

*Discover Bank v. Super. Ct.*,
   113 P.3d 1100 (Cal. 2005) ...........................................................................17, 18

*Dix v. ICT Group, Inc.*,
   161 P.3d 1016 (Wash. 2007) ..............................................................................4

*Doctors' Assocs., Inc. v. Casarotto*,
   517 U.S. 681 (1996) ......................................................................................15

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page iv

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Doerhoff v. Gen. Growth Props., Inc.*,
    2006 WL 3210502 (W.D. Mo. Nov. 6, 2006)........................................................19

*Easter v. CompuCredit Corp.*,
    2009 WL 499384 (W.D. Ark. Feb. 27, 2009)......................................................13

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
    2008 WL 830262 (E.D. Ark. Mar. 25, 2008) ......................................................6

*Farrar v. Hobby*,
    506 U.S. 103 (1992)..............................................................................................11

*Fonte v. AT&T Wireless Services, Inc.*,
    903 So. 2d 1019 (Fla. Dist. Ct. App. 2005) .......................................................18

*Francis v. AT&T Mobility LLC*,
    2009 WL 416063 (E.D. Mich. Feb. 18, 2009).........................................9, 10, 11

*Gentry v. Super. Ct.*,
    165 P.3d 556 (Cal. 2007) ....................................................................................17

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)...............................................................................................22

*Goetsch v. Shell Oil Co.*,
    197 F.R.D. 574 (W.D.N.C. 2000) .........................................................................6

*Granite Equip. Leasing Corp. v. Hutton*,
    525 P.2d 223 (Wash. 1974)....................................................................................4

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)...............................................................................................11

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003).............................................................................................22

*Gregory v. Sprint Spectrum L.P.*,
    2006 WL 2497781 (Cal. Ct. App. Aug. 30, 2006)................................................6

*Guiterrez v. State Line Nissan, Inc.*,
    2008 WL 3155896 (W.D. Mo. Aug. 4, 2008)....................................................20

*Harrington v. Pulte Home Corp.*,
    119 P.3d 1044 (Ariz. Ct. App. 2005) .................................................................16

*Homa v. Am. Express Co.*,
    2009 WL 440912 (3d Cir. Feb. 24, 2009)..........................................................20

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*H&R Block, Inc. v. Haese*,
  82 S.W.3d 331 (Tex. App. 2000) ....................................................................6

*Huang v. Wash. Mut. Bank*,
  2008 WL 4102918 (W.D. Wash. Aug. 25, 2008) ...........................................14

*In re Badger Mountain Irrigation Dist. Sec. Litig.*,
  143 F.R.D. 693 (W.D. Wash. 1992) ..............................................................3, 5

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............................................................6

*In re Detwiler*,
  2008 WL 5213704 (9th Cir. Dec. 9, 2008) ....................................................1, 2

*In re Jamster Mktg. Litig.*,
  2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) ...............................................4, 19

*In re Pizza Time Theatre Secs. Litig.*,
  113 F.R.D. 15 (N.D. Cal. 1986) ......................................................................5

*In re Verisign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .........................................................6

*In re Worlds of Wonder Secs. Litig.*,
  1990 WL 61951 (N.D. Cal. Mar. 23, 1990) ...................................................5

*Ito Int'l Corp. v. Prescott*,
  921 P.2d 566 (Wash. Ct. App. 1996) .............................................................3

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
  400 F.3d 868 (11th Cir. 2005) .......................................................................3

*Johnson v. Spider Staging Corp.*,
  555 P.2d 997 (Wash. 1976) ...........................................................................3

*Jones v. The Chubb Inst.*,
  2007 WL 2892683 (D.N.J. Sept. 28, 2007) ...................................................20

*Kaltwasser v. Cingular Wireless LLC*,
  543 F. Supp. 2d 1124 (N.D. Cal. 2008) .........................................................17

*Kates v. Chad Franklin Nat'l Auto Sales N., LLC*,
  2008 WL 5145942 (W.D. Mo. Dec. 1, 2008) .................................................20

*Kelley v. Microsoft Corp.*,
  251 F.R.D. 544 (W.D. Wash. 2008) ..............................................................3

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Keyes v. Bollinger*,
    640 P.2d 1077 (Wash. Ct. App. 1982)..................................................................11

*Kinkel v. Cingular Wireless LLC*,
    857 N.E.2d 250 (Ill. 2006) ..................................................................7, 18, 19

*Klussman v. Cross Country Bank*,
    36 Cal. Rptr. 3d 728 (Ct. App. 2005)..................................................................4

*La Torre v. BFS Retail & Commercial Operations, LLC*,
    2008 WL 5156301 (S.D. Fla. Dec. 8, 2008) ..................................................18

*Lange v. Penn Mut. Life Ins. Co.*,
    843 F.2d 1175 (9th Cir. 1988) ..................................................................3

*Laster v. T-Mobile USA, Inc.*,
    2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ..................................... *passim*

*Leeman v. Cook's Pest Control*,
    902 So. 2d 641 (Ala. 2004) ..................................................................16

*Leonard v. Terminix Int'l Co.*,
    854 So. 2d 529 (Ala. 2002) ..................................................................16

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)..................................................................23

*Lowden v. T-Mobile USA, Inc.*,
    512 F.3d 1213 (9th Cir.) ..................................................................7, 21, 22

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ..................................................................5

*Luna v. Household Fin. Corp.*,
    236 F. Supp. 2d 1166 (W.D. Wash. 2002)..................................................................7

*McGinnis v. T-Mobile USA, Inc.*,
    2008 WL 2858492 (W.D. Wash. July 22, 2008) ..................................................4

*McKee v. AT&T Corp.*,
    191 P.3d 845 (Wash. 2008)..................................................... *passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................22, 23

*Moody v. Sears, Roebuck & Co.*,
    2007 WL 2582193 (N.C. Super. Ct. May 7, 2007)..................................................................13

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page vii

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Morris v. Redwood Empire Bancorp.*,
   27 Cal. Rptr. 3d 797 (Ct. App. 2005)............................................................7

*Muhammad v. County Bank of Rehoboth Beach, Del.*,
   912 A.2d 88 (N.J. 2006)...............................................................................20

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003)....................................................................................11

*Palamara v. Kings Family Rests.*,
   2008 WL 1818453 (W.D. Pa. Apr. 22, 2008)...............................................13

*Perry v. Thomas*,
   492 U.S. 483 (1987)....................................................................................21

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007)......................................................................................5

*Pleasants v. Am. Express Co.*,
   541 F.3d 853 (8th Cir. 2008) ................................................................12, 20

*Powertel, Inc. v. Bexley*,
   743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ...................................................18

*Preston v. Ferrer*,
   128 S. Ct. 978 (2008).................................................................20, 21, 22, 23

*Riensche v. Cingular Wireless LLC*,
   2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ...........................................7

*Rollins, Inc. v. Garrett*,
   176 F. App'x 968 (11th Cir. 2006) ..............................................................18

*S.D.S. Autos, Inc. v. Chrzanowski*,
   976 So. 2d 600 (Fla. Ct. App. 2007) ...........................................................18

*Salter v. Citigroup, Inc.*,
   No. 03-16268 (11th Cir. Apr. 27, 2004) .......................................................18

*Sammy Enters. v. O.P.E.N. Am., Inc.*,
   2008 WL 2010357 (Wash. Ct. App. May 12, 2008)......................................12

*Schnall v. AT&T Wireless Servs., Inc.*,
   161 P.3d 395 (Wash. Ct. App. 2007)........................................................3, 4

*Scott v. Cingular Wireless LLC*,
   161 P.3d 1000 (Wash. 2007).........................................................7, 8, 12, 14

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Shroyer v. New Cingular Wireless Services, Inc.,*
   498 F.3d 976 (9th Cir. 2007) ..................................................................17, 21, 22

*Southwell v. Widing Transp., Inc.,*
   676 P.2d 477 (Wash. 1984)....................................................................................3

*State ex rel. Corbin v. Pickrell,*
   667 P.2d 1304 (Ariz. 1983).....................................................................................5

*State Farm Mut. Auto Ins. Co. v. Campbell,*
   538 U.S. 408 (2003)...............................................................................................5

*Stern v. Cingular Wireless Corp.,*
   453 F. Supp. 2d 1138 (C.D. Cal. 2006) .................................................................7

*Stiener v. Apple Computer, Inc.,*
   556 F. Supp. 2d 1016 (N.D. Cal. 2008) ...............................................................17

*Strawn v. AT&T Mobility, Inc.,*
   2009 WL 154433 (S.D.W. Va. Jan. 20, 2009)......................................................21

*Ting v. AT&T,*
   319 F.3d 1126 (9th Cir. 2003) ............................................................................21

*Vaden v. Discover Bank,*
   2009 WL 578636 (U.S. 2009)................................................................................9

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,*
   489 U.S. 468 (1989).........................................................................................21, 22

*Watson Wyatt & Co. v. SBC Holdings, Inc.,*
   513 F.3d 646 (6th Cir. 2008) ...............................................................................6

*West v. Henderson,*
   278 Cal. Rptr. 570 (Ct. App. 1991) ....................................................................12

*Whitney v. Alltel Commc'ns, Inc.,*
   173 S.W.3d 300 (Mo. Ct. App. 2005) ..................................................................19

*Williams v. State,*
   885 P.2d 845 (Wash. Ct. App. 1994) .....................................................................3

*Woods v. QC Fin. Servs., Inc.,*
   2008 WL 5454124 (Mo. Ct. App. Dec. 23, 2008) ...............................................20

*Yeagley v. Wells Fargo & Co.,*
   2008 WL 171083 (N.D. Cal. Jan. 19, 2008) .......................................................13

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Zuver v. Airtouch Commc'ns, Inc.*,
    103 P.3d 753 (Wash. 2004)...............................................................................13, 14

**STATUTES**

9 U.S.C. § 2 ........................................................................................................6, 15

**OTHER AUTHORITIES**

Am. Arbitration Ass'n, *Analysis of the American Arbitration Association's Consumer
    Arbitration Caseload*, at http://www.adr.org/si.asp?id=5027....................................8

Admin. Office of U.S. Courts, *2007 Judicial Facts and Figures*,
    at http://www.uscourts.gov/judicialfactsfigures/2007.hmtl ......................................8

Lindsay R. Androski, Comment, *A Contested Merger: The Intersection of Class Actions
    and Mandatory Arbitration Clauses*, 2003 U. CHI. LEGAL F. 631 ..........................10

Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*,
    59 VAND. L. REV. 729 (2006) ..................................................................................21

Meredith W. Nissen, *Class Action Arbitration*s,
    11 DISP. RESOL. MAG. 19 (Summer 2005).................................................................22

RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) .......................................1, 2, 5

Searle Civil Justice Inst., Nw. U. Sch. of L., *Consumer Arbitration* (Mar. 2009),
    *available at* http://www.searlearbitration.org/p/full_report.pdf ..............................8

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class
    Action Litigation: What Difference Does it Make?*,
    81 NOTRE DAME L. REV. 591 (2006) .......................................................................12

*United States District Court—Judicial Caseload Profile*,
    at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. ...................................................8

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page x

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

Plaintiffs do not (and could not) dispute that they agreed to resolve their disputes with ATTM or its predecessors through arbitration on an individual basis. Instead, they challenge the enforceability of their arbitration agreements. As we explain, those arguments fail for several reasons. Most important, in contending that Washington law applies to the unconscionability challenges of the non-Washington plaintiffs, Plaintiffs ignore the plain language of their contracts. Those contracts select the law where the customer lives—a choice of law that, under relevant Washington conflicts-of-laws principles, is fully enforceable. Plaintiffs' effort to avoid that eminently fair choice-of-law provision centers largely on their assumption that the "tort" conflicts-of-law principles rather than the "contract" principles govern—an assumption that this Court has already rejected. Second, any attack on ATTM's arbitration provision under the contract law of the Plaintiffs' home states would fail, particularly in view of the exceptionally pro-consumer terms of ATTM's arbitration agreement. Last, if the law of any of those states were construed to render ATTM's arbitration provision unenforceable, that state law would be preempted by the Federal Arbitration Act ("FAA"), as recent Supreme Court authority confirms.

## I.   THE LAW OF THE PLAINTIFFS' HOME STATES GOVERNS PLAINTIFFS' CHALLENGES TO THEIR AGREEMENTS TO ARBITRATE.

Plaintiffs' contracts select the law of their nine home states. Mem. in Supp. of Arb. Mot. ("Mem.") 8. Plaintiffs nonetheless contend that Washington law governs even the non-Washington plaintiffs' unconscionability challenges. They are wrong. Under Washington's choice-of-law principles, a contractual "choice-of-law provision" must be enforced "unless all three of the following conditions are met: (1) 'without the provision, Washington'" law otherwise "'would apply' under section 188 of the Restatement"; (2) "'the chosen state's law violates a fundamental public policy of'" the state whose law would otherwise apply; "and (3) '[the other state's] interest in the determination of the issue materially outweighs the chosen state's interest.'" *In re Detwiler*, 2008 WL 5213704, at *1 (9th Cir. Dec. 9, 2008) (quoting *McKee v. AT&T Corp.*, 191 P.3d 845, 851 (Wash. 2008)). Plaintiffs cannot meet these conditions. As we discuss in Section A, for non-Washington plaintiffs, Section 188 would point to the home state of each plaintiff. As such, there is no need to consider the second and third

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 1

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    requirements.  As we discuss in Section B, however, assuming *arguendo* that Washington law

2    would otherwise apply, it would not violate a fundamental policy of Washington to apply the

3    unconscionability law of plaintiffs' home states; nor does Washington have a materially greater

4    interest in applying its law to the non-Washington plaintiffs.

5    **A.    Plaintiffs' Local Law Would Apply Even Without A Choice-Of-Law Clause.**

6    Plaintiffs' contention falters at the first step because, even without a contractual choice of

7    law, Washington would apply the law of Plaintiffs' home states to all non-Washington plaintiffs.

8    Section 188(1) of the Restatement, which Washington follows, provides that the law of the state

9    with the "most significant relationship to the transaction and the parties" governs "issue[s] in

10   contract," such as Plaintiffs' unconscionability challenge.  Although Plaintiffs point to Section

11   6(2) of the Restatement (Opp. 24–27), Section 188(2) specifies the precise factors to be

12   considered: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place

13   of performance, (d) the location of the subject matter of the contract, and (e) the domicile,

14   residence, nationality, place of incorporation and place of business of the parties."  Moreover,

15   Section 188(3) confirms that even when only the "place of negotiating the contract and the place

16   of performance" are the same, "the local law of [that] state will usually be applied."

17   The Section 188 factors require application of the law of each plaintiff's home state,

18   which was "the place of contracting, * * * negotiation * * * [and] performance, the location of

19   the subject matter, and the residence of one of the parties."  *McKee*, 191 P.3d at 852.  By

20   contrast, Washington's "only tie to this litigation is that it is the state of incorporation" of AT&T

21   Wireless Services (AWS), a factor *McKee* held insufficient to overcome the others.  *Id.*  Thus,

22   applying *McKee*, the Ninth Circuit held that Florida law governed the arbitration clause in a

23   Florida customer's T-Mobile contract, even though T-Mobile "is headquartered in Washington."

24   *Detwiler*, 2008 WL 5213704, at *1.  Here, the case for Washington law is even weaker than in

25   *Detwiler*, because (i) ATTM was and is a Delaware LLC with its principal place of business in

26   Georgia; (ii) Washington has no tie at all to ***ATTM's*** arbitration provision; and (iii) many of the

27   plaintiffs accepted ATTM's (then Cingular's) arbitration clause when switching from AWS.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 2

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

In suggesting that Washington law would apply in the absence of a choice-of-law clause (Opp. 24–27), Plaintiffs chiefly rely on pre-*McKee* case law relevant only to tort suits.[1]  But as this Court has already held, "principles relating to actions in tort" are the "wrong choice-of-law principles" for Plaintiffs' challenge to their arbitration agreements.  Order, Dkt. #101, at 4.[2] Even if those tort principles were applicable, they would not point to Washington.  If, as Plaintiffs allege, Cingular degraded AWS's network in order to force customers to switch to Cingular's network, that alleged conduct would have emanated from Cingular's headquarters in Atlanta.  Under Georgia law, ATTM's arbitration provisions are fully enforceable.[3]

B.     **Washington Has Neither A Fundamental Public Policy Nor A Greater Interest Favoring Application Of Its Law To Out-Of-State Plaintiffs.**

Even if Washington law would apply in the absence of a choice-of-law provision, the choice-of-law clauses in the non-Washington plaintiffs' contracts must be enforced because doing so would not violate a fundamental policy of Washington and because Washington does not have a materially greater interest than that of the states in which the plaintiffs reside.

1.  **No fundamental Washington policy would be violated**.  As discussed below (at 7–15), even if Washington law were applicable to all plaintiffs, ATTM's arbitration provision is fully enforceable.  But assuming *arguendo* that the provision were unenforceable under Washington law, that would not preclude the application of the law of the home states of the

---

[1]     *See Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976) (invoking "general principles which apply to a tort choice-of-law problem"); *Schnall v. AT&T Wireless Servs., Inc.*, 161 P.3d 395, 402 (Wash. Ct. App. 2007) (considering "tort claims" outside the coverage of a choice-of-law clause); *see also Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 551 (W.D. Wash. 2008) ("general tort principles"); *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175–76 (W.D. Wash. 2006) (similar); *In re Badger Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 699–700 (W.D. Wash. 1992) (citing *Southwell v. Widing Transp., Inc.*, 676 P.2d 477, 479–80 (Wash. 1984), a tort conflict-of-law decision).  Other decisions that Plaintiffs cite do not apply Washington's conflicts rules.  *See, e.g., Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175, 1178–81 (9th Cir. 1988) (applying Arizona's rule for tort suits).

[2]     Plaintiffs also cite a Washington securities-fraud case they say applies Washington law to "'encourage Washington residents involved in business transactions to behave responsibly.'"  Opp. 25 (quoting *Ito Int'l Corp. v. Prescott*, 921 P.2d 566, 571 (Wash. Ct. App. 1996)).  Yet in *Ito*, the defendant's location was far from the only Restatement factor pointing to Washington:  The largest purchaser was a Washington corporation, the subject of the transaction was a building in Seattle, and the out-of-state purchasers were solicited through "selling and marketing activity occurr[ing] in Seattle," including a "cocktail party" in Seattle.  921 P.2d at 571.  In any event, it is not clear which conflict-of-laws rule (tort or contract) the court was applying, as at least two decisions it cited (*Williams v. State*, 885 P.2d 845 (Wash. Ct. App. 1994), and *Badger Mountain*) involved the tort rule.

[3]     When, as here, "'the opportunity to recover attorneys' fees is available'" in arbitration, an agreement to arbitrate on an individual basis does "'not have the practical effect of immunizing'" a defendant and is not "substantively unconscionable" under Georgia law.  *Dale v. Comcast Corp.*, 498 F.3d 1216, 1222 (11th Cir. 2007) (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005)).

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 3

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

non-Washington plaintiffs. No fundamental Washington policy bars individual arbitration of ***non-residents'*** claims. Washington's public policy is violated only "when ***a citizen's*** ability to assert a private right of action is significantly impaired." *Dix v. ICT Group, Inc*., 161 P.3d 1016, 1024 (Wash. 2007) (emphasis added). In fact, *McKee* emphasized that *Dix* invalidated a contract invoked "against Washington citizens." 191 P.3d at 852.[4]

Plaintiffs invoke a purported Washington policy of deterring Washington businesses from engaging in "misconduct." Opp. 18–19 (citing *Schnall v. AT&T Wireless Servs., Inc.*, 161 P.3d 395 (Wash. Ct. App. 2007)). But any such policy is inapplicable to ATTM, which is not a Washington entity. *See* page 2, *supra*. And as Judge Zilly has observed, *Schnall* applied conflict-of-law principles for "tort" rather than "contract law" questions, such as whether an "arbitration clause is valid." *McGinnis v. T-Mobile USA, Inc.*, 2008 WL 2858492, at *3 (W.D. Wash. July 22, 2008). Indeed, when *Schnall* analyzed what law applied to contract questions, it held that AWS's choice-of-law clause "***should be enforced as written*** because it chooses the law with which the customer is most familiar." 161 P.3d at 404 & n.40 (emphasis added).

**2. No materially greater interest.** Washington also does not have a materially greater interest than Plaintiffs' home states in policing their arbitration agreements. Washington may have the primary interest in disputes involving its "consumers" (*McKee*, 191 P.3d at 852) or contracts "signed in * * * Washington" (*Granite Equip. Leasing Corp. v. Hutton*, 525 P.2d 223, 226–27 (Wash. 1974); *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1196 (Wash. Ct. App. 1997)). But by the same reasoning, ***other states*** have stronger interests in regulating their ***own*** consumers' in-state agreements. As Judge Zilly held in *McGinnis*, Georgia's "interest in determining the rights of its citizens in contracts with out-of-state actors outweighs whatever interest Washington has in regulating contracts its citizens enter into abroad." 2008 WL 2858492, at *3; *see also In re Jamster Mktg. Litig.*, 2008 WL 4858506, at *3, *6 (S.D. Cal. Nov.

---

[4]     Plaintiffs also cite out-of-state cases in which agreements to arbitrate on an individual basis were held to violate a fundamental policy of the forum state. Opp. 19–20. But none of those cases applied Washington law. Moreover, the majority of those cases involved plaintiffs who ***were*** residents of the forum state. *See*, *e.g.*, *Coady v. Cross Country Bank*, 729 N.W.2d 732, 734 (Wis. Ct. App. 2007); *Klussman v. Cross Country Bank*, 36 Cal. Rptr. 3d 728, 739 (Ct. App. 2005).

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 4

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1   10, 2008) (applying Section 187(2) of the Restatement and explaining that "plaintiffs fail to

2   identify any legitimate and cognizable interest California has concerning transactions occurring

3   outside its borders and involving non-California residents").

4       Plaintiffs suggest that the state whose law most favors class actions always triumphs,

5   because allowing non-residents new opportunities to pursue class actions cannot offend their

6   home states' interests.  Opp. 23.  But a "basic principle of federalism" is that "each State may

7   make its own reasoned judgment about what conduct is permitted or proscribed within its

8   borders."  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  "States need

9   not, and in fact do not, provide [consumer] protection in a uniform manner."  *BMW of N. Am.,*

10  *Inc. v. Gore*, 517 U.S. 559, 569 (1996).  Indeed, the Ninth Circuit has recognized that many

11  states consider class-arbitration prohibitions to be fully enforceable, and for this reason explained

12  that a nationwide class action could not possibly be certified unless the district court engaged in

13  "a state-by-state review of contract conscionability jurisprudence."  *Lozano v. AT&T Wireless*

14  *Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) (affirming district court's denial of class

15  certification).  In short, Plaintiffs cannot "impose" Washington's "policy choice" regarding the

16  enforceability of arbitration agreements upon "States with different public policies."  *Philip*

17  *Morris USA v. Williams*, 549 U.S. 346, 352–53 (2007) (internal quotation marks omitted).[5]

18  **II.    PLAINTIFFS' AGREEMENTS TO ARBITRATE ON AN INDIVIDUAL BASIS ARE ENFORCEABLE UNDER THE LAW OF THEIR HOME STATES.**

19      Plaintiffs argue that the requirement that arbitration be conducted on an individual basis

20

21  [5]    Contrary to Plaintiff's implication (Opp. 23), *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543

22  (D.N.J. 1998), does not hold that the state with the most pro-class-action rule always has the materially greater interest.  Unlike Plaintiffs' contention here, the "differences" between the states' laws in that case "d[id] not represent competing or conflicting resolutions of a particular policy issue."  *Id.* at 548.  Moreover, the issue there

23  was whether the laws of the two states—concerning the availability of treble damages and attorneys' fees—even were in conflict, ***not*** whether a choice-of-law clause should be set aside.  *Id.*  Plaintiffs' other cases (Opp. 21–23) are also far afield:  They did not involve the enforceability of choice-of-law clauses, but rather addressed whether

24  applying the forum's law to absent class members was so arbitrary as to violate due process (*In re Worlds of Wonder Secs. Litig.*, 1990 WL 61951, at *5 (N.D. Cal. Mar. 23, 1990)), whether state regulators could sue an in-state entity

25  accused of defrauding out-of-staters (*Abrams v. DeFelice*, 77 B.R. 376, 380–81 (D. Conn. Bankr. 1987); *State ex rel. Corbin v. Pickrell*, 667 P.2d 1304, 1312 (Ariz. 1983)), whether the Commerce Clause barred a state from permitting non-residents to sue for in-state frauds (*Diamond Multimedia Sys., Inc. v. Super. Ct.*, 968 P.2d 539, 556–

26  57 (Cal. 1999)), whether a statute should be construed as applying to out-of-state transactions (*Abrams v. Camera Warehouse, Inc.*, 496 N.Y.S.2d 659, 660 (Sup. Ct. 1985)), and whether the forum state's law applied to a fraud

27  claim in the absence of a choice-of-law clause (*Badger Mountain*, 143 F.R.D. at 699–700; *In re Pizza Time Theatre Secs. Litig.*, 113 F.R.D. 15, 18–19 (N.D. Cal. 1986)).

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 5

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

makes their arbitration agreements unconscionable. Opp. 29–39. But virtually all of the relevant states employ a high standard for invalidating contract provisions on unconscionability grounds. *See* Mem. 42 n.34. Under the standards applied by those states, the arbitration clause at issue here—ATTM's 2006 clause—is far from unconscionable.

### A.    ATTM's 2006 Arbitration Provision Governs This Dispute.

Plaintiffs concentrate virtually all of their fire on ATTM's 2006 arbitration provision. They do drop a footnote, however, contending that the 2006 provision—which expressly covers "**all disputes and claims** between us," "including * * * claims that arose before this or any prior Agreement * * * [and] claims that are currently the subject of purported class action litigation in which you are not a member of a certified class" (Berinhout Dec. Ex. 1, at 2 (boldface in original)—is inapplicable because (in their view) an arbitration clause that is revised after a lawsuit is "fil[ed]" cannot "retroactively apply." Opp. 30 n.21. They are wrong, as a federal court in California explained in rejecting the same argument. *See Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *appeal pending*, No. 08-56394 (9th Cir.).

Under the FAA, agreements to arbitrate an "existing controversy" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also, e.g.*, *Watson Wyatt & Co. v. SBC Holdings, Inc*., 513 F.3d 646, 649–52 (6th Cir. 2008); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007). Many courts have enforced revisions to an arbitration provision made during litigation, so long as the terms of the agreement reflect that intent.[6] Plaintiffs rely on cases in which the contracts *did not have* arbitration clauses when the litigation began.[7] But here, ATTM merely changed *existing* arbitration agreements to make them *more favorable* to its customers. *See Laster*, 2008 WL 5216255, at *6–7 (citing, *e.g.*, *Badie v. Bank of Am.*, 79 Cal.

---

[6]    *See Laster*, 2008 WL 5216255, at *5–*6; *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7 (E.D. Ark. Mar. 25, 2008) (revisions to arbitration agreement made during the course of litigation govern that litigation); *Davidson v. Cingular Wireless LLC*, 2007 WL 896349, at *4 (E.D. Ark. Mar. 23, 2007) (ATTM's revised 2006 clause applies to lawsuit filed in 2003); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577–79 (W.D.N.C. 2000) (compelling individual arbitration based on terms of provision that had been revised to add a class waiver after the commencement of litigation); *Gregory v. Sprint Spectrum L.P.*, 2006 WL 2497781, at *9 (Cal. Ct. App. Aug. 30, 2006) (unpublished) (suggesting that an arbitration provision would be enforced with respect "to litigation already pending" so long as "the provision * * * contain[ed] some language reflecting the parties' intent to do so").

[7]    *See* Opp. 30 n.21 (citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), *Bilbrey v. Cingular Wireless, LLC*, 164 P.3d 131 (Okla. 2007), *H&R Block, Inc. v. Haese*, 82 S.W.3d 331 (Tex. App. 2000), and *Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528 (Sup. Ct. 1999)).

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    Rptr. 2d 273, 283–84 (Ct. App. 1998)).  In short, Plaintiffs' attack on the applicability of the

2    2006 clause—which they tellingly relegate to a footnote—should be rejected.[8]

3          **B.    The Agreements Of The Washington Plaintiffs Are Fully Enforceable.**

4              **1.    ATTM's 2006 Arbitration Provision Is Not Substantively Unconscionable Under Washington Law.**

5                   **a.    Plaintiffs mischaracterize *Scott* as a *per se* ban on agreements to arbitrate on an individual basis.**

6          Relying chiefly on *Scott v. Cingular Wireless LLC*, 161 P.3d 1000 (Wash. 2007), which

7    refused to enforce ATTM's *2003* arbitration provision, Plaintiffs in effect argue that agreements

8    to arbitrate on an individual basis are *per se* substantively unconscionable under Washington

9    law.  Opp. 29–35.[9]  But far from creating a categorical bar against such agreements, the

10   Washington Supreme Court has explained that it could "certainly conceive of situations where a

11   class action waiver ***would not prevent a consumer from vindicating his or her substantive***

12   ***rights***" and "would thus be enforceable." *Scott*, 161 P.3d at 1009 n.7 (emphasis added); *see also*

13   *McKee*, 191 P.3d at 852 ("We have held that some class action prohibitions may be

14   conscionable.").    Accordingly, Judge Robart has held that *Scott* "adopted a case-specific

15   approach," and, under that approach, enforced Dell's arbitration provision. *Carideo v. Dell, Inc.*,

16   520 F. Supp. 2d 1241, 1246–47 (W.D. Wash. 2007).  ATTM's 2006 provision, which is far more

17   pro-consumer than the Dell provision upheld in *Carideo*, passes muster under *Scott*'s "case-

18

19   _____

20   [8]        Plaintiffs also cite *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250 (Ill. 2006), and *Stern v. Cingular Wireless Corp.*, 453 F. Supp. 2d 1138 (C.D. Cal. 2006).  The *Kinkel* court held that under Illinois law, Cingular's then-current arbitration provision did not apply to a former customer whose contract had been terminated.  857 N.E.2d at 259.  Here, the Illinois plaintiffs were current customers when they received the 2006 provision. Berinhout Dec., Dkt. #134 ¶ 50.  The *Stern* court misapplied the California rule that unconscionability should be assessed as of "'the moment when [the contract] is entered into by both parties'" (453 F. Supp. 2d at 1144 (quoting *Am. Software, Inc. v. Ali*, 54 Cal. Rptr. 2d 477, 480–81 (Ct. App. 1996))), which directs courts evaluating the fairness of a bargain not to use hindsight paternalistically in determining whether a particular deal was a good one. *See Morris v. Redwood Empire Bancorp.*, 27 Cal. Rptr. 3d 797, 810 (Ct. App. 2005) ("Although Morris's transaction with National ultimately provided no value to him, unconscionability is determined as of the time the contract was entered into, not in light of subsequent events."); *see also* Mem. 18 n.18. *Stern* is also inapplicable to those plaintiffs who switched to Cingular (or are not subject to California law).

25   [9]        Plaintiffs also cite *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir.), *cert. denied*, 129 S. Ct. 45 (2008); *Riensche v. Cingular Wireless LLC*, 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006); and *Luna v. Household Finance Corp.*, 236 F. Supp. 2d 1166 (W.D. Wash. 2002).  *Riensche* and *Luna* were superseded by *Scott*'s articulation of Washington law.  Those decisions and *Lowden* also involved arbitration provisions that were less pro-consumer than ATTM's 2006 provision.  None of those provisions offered enhanced remedies in individual arbitration.  Moreover, in *Luna*, the plaintiffs were "financially strapped," and the arbitration fees imposed on them were "likely drastically to exceed the costs of pursuing the claim in court." 236 F. Supp. 2d at 1179, 1182.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 7

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

specific" standard.[10]

> **b.    ATTM's 2006 provision encourages Washington consumers to resolve their claims in arbitration.**

Under ATTM's 2006 provision, the Washington plaintiffs (Frerker and the Shulmans) can readily "vindicat[e]" their "substantive rights" in individual arbitration.  *Scott*, 161 P.3d at 1009 n.7.  The provision does not "deny" customers "any meaningful remedy" (*id.* at 1008).  To the contrary, ATTM's provision enhances the available remedies by providing that, if a Washington customer does better than ATTM's last settlement offer, he or she will receive $5,000 and double attorneys' fees in lieu of any smaller award.  Thousands of citizens sue in Washington's small claims court each year to recover amounts that are less than $5,000, even though doing so requires greater effort than invoking ATTM's flexible arbitration procedures. Mem. 13. In view of the potential for a $5,000 minimum payment, the Washington plaintiffs would be worse off serving as class representatives, who typically receive payments of only $1,000 or $2,000 for shepherding a case through settlement as fiduciaries for the class.[11]

In addition to the potential to receive a $5,000 minimum payment, arbitration generally is much quicker than litigation,[12] and consumers tend to prevail more often in arbitration than in court.[13]  Moreover, ATTM customers are particularly likely to obtain full redress with minimal effort.  As one federal court has recognized, the 2006 clause "prompt[s] ATTM to *accept*

---

[10]       The Dell arbitration provision Judge Robart enforced in *Carideo* required the customer to pay arbitration fees up to "the cost of filing in state court, which in Seattle means a cap of $200," although Dell offered to pay all arbitration fees that "exceed the initial $25 filing fee."  520 F. Supp. 2d at 1248.  By contrast, customers arbitrate for free under ATTM's 2006 provision and also may recover special premiums no court could award.

[11]       *See* Mem. 13 (citing study).  Plaintiffs' proffered experts on the market for consumer legal services testified that these incentive payments—often much less than ATTM's premium—are "fair compensation for the added burden of being a class representative."  Blinn Dep. 130:8–15; *see also* Plutzik Dep. 90:9–16 ($5,000 is "fair and reasonable").

[12]       American Arbitration Association ("AAA") consumer arbitrations proceed to an award in an average of four to six months.  AAA, *Analysis of the American Arbitration Association's Consumer Arbitration Caseload*, at http://www.adr.org/si.asp?id=5027.  By contrast, federal civil cases average 23.2 months before reaching trial. *United States District Court—Judicial Caseload Profile*, at http://www.uscourts.gov/cgi-bin/cmsd2006.pl.  Class actions take even longer to reach a final resolution, as this case exemplifies.

[13]       A recent study shows that consumers prevail and win some relief in 53.3% of AAA arbitration that they file.  Searle Civil Justice Inst., Nw. U. Sch. of L., *Consumer Arbitration* xiii (Mar. 2009), *available at* http://www.searlearbitration.org/p/full_report.pdf.  In court, by contrast, virtually all consumer actions that are not settled or withdrawn are dismissed, with only 1.3% to 4.1% of federal civil cases ever reaching trial, much less a verdict for the plaintiff, in the last five years.  *See* Admin. Office of U.S. Courts, *2007 Judicial Facts and Figures* tbl. 4.10, at http://www.uscourts.gov/judicialfactsfigures/2007/Table410.pdf.

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  *liability*" before arbitration—"even for claims of questionable merit and for claims it does not

2  owe"—to avoid the risk of having to pay the premiums and arbitration costs.  *Laster*, 2008 WL

3  5216255, at *11 (emphasis in original).  *Accord Francis v. AT&T Mobility LLC*, 2009 WL

4  416063, at *9 (E.D. Mich. Feb. 18, 2009) (plaintiff's "assertion that AT&T's right to make the

5  final pre-arbitration settlement offer renders the premium recovery * * * illusory ignor[e]s the

6  goal of informally resolving billing disputes before they reach arbitration").

7      For this reason, Plaintiffs miss the mark in objecting that few disputes proceed to a final

8  award.  Opp. 34.  As one court has explained,"[i]f ATTM resolves its customers' claims through

9  prompt payment, and does so for fear of being subjected to its contract-based * * * Premium, the

10  Premium has served a noble purpose, even if no customer ever actually receives it."  *Laster*,

11  2008 WL 5216255, at *11.  In practice, this incentive works:  ATTM dispenses over a hundred

12  million dollars per month in credits—amounting to over $1 billion a year—to resolve customer

13  complaints without the need for arbitration.  Mem. 6.  Plaintiffs dismiss these disputes as

14  involving "'billing system error[s]' rather than the complex claims" they assert.  Opp. 32.  But as

15  the record shows, credits can be granted for any factor "caus[ing] the customer's bill to be

16  incorrect," in cases of "misunderstanding, miscommunication, or unexpected charge[s]," or if the

17  customer "dispute[s] roaming or overage charges."  Simon Dec. (Dkt. #153) Ex. C.  A customer

18  who complains about alleged dropped calls or poor service can get relief.

19      Plaintiffs also are mistaken in contending that their claims are so "complex" that

20  consumers are not likely to realize that they have claims and will have difficulty attracting

21  counsel.  Opp. 32.  Judge Robart rejected the same arguments in *Carideo*.  *See* 552 F. Supp. 2d at

22  1247–49.  Plaintiffs allege that call quality worsened following the merger, forcing them to

23  switch to Cingular.  A claim for degraded service—like the malfunctioning laptop in *Carideo*—

24  would be apparent to any user.  Even if it might be expensive to prove an individual claim in

25  court, arbitration is a different kettle of fish.  "A big part of arbitration is avoiding the procedural

26  niceties of formal litigation."  *Vaden v. Discover Bank*, 2009 WL 578636, at *15 (U.S. 2009)

27  (Roberts, C.J, concurring in and dissenting in part).  Because of the informality of the

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 9

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  process, arbitrators are less likely to impose the kinds of evidentiary burdens that characterize

2  judicial dispute resolution.[14]  Moreover, contrary to plaintiffs' implicit assumption, it would be

3  economically irrational for ATTM to deploy vast resources to resist an individual claim in

4  arbitration.[15]  Precisely because an individual arbitration is not a high-stakes class action,

5  ATTM's incentives are to try to resolve it quickly and cheaply without raising every possible

6  defense.  Indeed, ATTM has powerful incentives to resolve claims like these **before** arbitration to

7  avoid paying the costs of arbitration and the premiums that would ensue if the customer were

8  awarded more than ATTM's last settlement offer.  *See Francis*, 2009 WL 416063, at *9; *Laster*,

9  2008 WL 521655, at *11.

10     In addition, the availability of statutory attorneys' fees—and potentially double attorneys'

11 fees—provides adequate incentives for attorneys to represent Washington consumers in

12 arbitration.  The very "same successful consumer attorney relied upon by the plaintiffs in *Scott*"

13 testified that his threshold for taking an individual claim was "$5,000" (*Carideo*, 520 F. Supp. 2d

14 at 1248)—the amount of ATTM's premium for Washington customers.  *See also* Maier Dep.

15 43:13–45:24 (same threshold).  Many attorneys, particularly the "less-established" ones who

16 Judge Robart found would be willing to pursue claims under Dell's less pro-consumer provision

17 (*Carideo*, 520 F. Supp. 2d at 1249), may lower their thresholds for ATTM customers, given the

18 ease of arbitration and the chance of earning double their fee.  ATTM presented declarations

19 from several attorneys (including two from Washington) who testified that they or their firms

20 would represent ATTM customers under these terms.  *See* Adolph Dec., Dkt. #59 ¶ 3; Leyh Dec.,

21 ——————————————

[14]   *Cf. Francis*, 2009 WL 416063, at *7–*8 (rejecting plaintiff's contention that he must incur "the 'seven
22 figure' cost of discovery" into "AT&T's technical ability to determine the geographic source of wireless phone
calls" to arbitrate a claim that he had been improperly charged for domestic calls at an international rate because he
23 could use "his monthly itemized bills, and presumably his knowledge of where he and his wife were located when
they sent or received the disputed calls" to identify the allegedly improper charges); *Carideo*, 520 F. Supp. 2d at
1247 (rejecting argument that product-defect claim was too expensive to prove in individual arbitration because "a
24 claimant might cost-effectively print out the many complaints about a particular model posted on Dell's online
community forum and submit those as proof of the defect to the decision-maker").

25 [15]   As another district court has explained, ATTM's provision "does not require * * * confidentiality * * *,
thereby allowing consumers the option of disseminating * * * information [about their claims] in the manner of their
26 choosing" (*Cruz v. Cingular Wireless LLC*, 2008 WL 4279690, at *4 (M.D. Fla. Sept. 15, 2008), *appeal pending*,
No. 08-16080-CC (11th Cir.).  Consumers could use this information to "initiat[e] a multitude of arbitration claims,"
forcing "the business * * * to pay separate fees for each arbitrated claim" as well as statutory attorneys' fees to
27 prevailing claimants.  Lindsay R. Androski, Comment, *A Contested Merger: The Intersection of Class Actions and
Mandatory Arbitration Clauses*, 2003 U. Chi. Legal F. 631, 659.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 10

Kipling Law Group pllc
3601 Fremont Ave N, Suite 414
Seattle, Washington 98103
telephone (206) 545-0345
fax (206) 545-0350

1  Dkt. #58 ¶ 4; *see also*, *e.g.*, Bissell Dec., Dkt. #71 ¶ 9; Halle Dec., Dkt. #56 ¶ 4; Pittman Dec.,

2  Dkt. #71 ¶ 11; Sauter Dec., Dkt. #71 ¶ 12.  Although Plaintiffs found attorneys who disagree,

3  those attorneys mistakenly assumed that individual arbitration entails the same "sophisticated

4  litigation" that characterizes high-stakes class-action litigation. Fons Dec., Dkt. #141 ¶ 12; *see*

5  *also* Blinn Dec., Dkt. #137 ¶ 43; Rossman Dec., Dkt. #152 ¶ 22; Fahlgren Dec., Dkt. #140 ¶ 6;

6  Mansfield Dec., Dkt. #150 ¶ 6; Hartzell Dec., Dkt. #143 ¶ 25; Hoerner Dec., Dkt. #145 ¶ 13;

7  Kalnitz Dec., Dkt. #147 ¶¶ 7, 11–12; Maier Dec., Dkt. #149 ¶¶ 12–13.  They also failed to

8  understand that an award of statutory attorneys' fees or the contractual double-fee award would

9  not be reduced merely because it exceeds the customer's claim.  *See*, *e.g.*, Hartzell Dec., Dkt.

10  #143 ¶ 27; Maier Dec., Dkt. #149 ¶ 18; Fahlgren Dec., Dkt. #140 ¶ 4.[16]

11      Plaintiffs' attorney declarants also discounted the premium features of ATTM's

12  provision, speculating that ATTM would "game the premiums" by offering to settle for more

13  than the demand.  *E.g.*, Hartzell Dec. ¶ 29; Fahlgren Dec. ¶¶ 6–7; Maier Dec., Dkt. #150 ¶¶ 22–

14  26.  But they overlook the possibility of obtaining attorneys' fees during the settlement process.

15  Because ATTM must pay $1,700 in arbitration fees whenever a customer seeks a hearing (Mem.

16  25 n.25), ATTM has immediate reason to settle the dispute for any lesser amount, which in most

17  cases would leave a healthy margin for the attorney's time.  *See*, *e.g.*, Maier Dec. ¶¶ 17–18

18  (estimating four hours).  Moreover, as one court has found, "ATTM has an incentive to include

19  reasonable attorney's fees in its settlement offers, and has a policy of doing so." *Laster*, 2008

20  WL 5216255, at *10 n.7.  If ATTM does not offer fees and the arbitrator later awards them, the

21  plaintiff is eligible for the premium.[17]  In any event, Plaintiffs' complaint that it is too ***easy*** for

---

22

23  [16]    Under both Washington's Consumer Protection Act and federal law, "reasonable" attorneys' fees need not
be proportionate to the amount at stake. *Keyes v. Bollinger*, 640 P.2d 1077, 1084–85 (Wash. Ct. App. 1982); *accord*

24  *Farrar v. Hobby*, 506 U.S. 103, 113 (1992).  Instead, fees are calculated on an hourly "lodestar" basis, with a
"contingency adjustment" "to compensate for the possibility" that "litigation would be unsuccessful" and "no fee
would be obtained." *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 204 (Wash. 1983) (quoting *Copeland v.*

25  *Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980)).  ATTM's agreement to pay twice the fees "reasonably accrued"
(Mem. 5) would be governed by these standards. *See also* Berinhout Fact Dep. 118:10–20.

26  [17]    Courts "should not, on * * * 'mere speculation' that an arbitrator might interpret" an agreement "in a
manner that casts [its] enforceability into doubt," refuse to refer the question to an arbitrator. *PacifiCare Health*

27  *Sys., Inc. v. Book*, 538 U.S. 401, 406–07 (2003).  Rather, "the proper course is to compel arbitration." *Id.* at 407; *see
also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–92 (2000) (compelling arbitration despite claim of
"prohibitive costs" because plaintiff did not show a "likelihood of incurring such costs"); *Francis*, 2009 WL

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 11

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    ATTM's customers to obtain make-whole relief turns the unconscionability inquiry on its head.

2    ### c.    ATTM's dispute-resolution system is not an inferior substitute for class actions.

3    Because ATTM's 2006 arbitration provision is not unconscionable as to the Washington

4    Plaintiffs, Plaintiffs shift the focus elsewhere, arguing that, absent a class adjudication, the

5    challenged conduct "could continue as to" ATTM's other customers. Opp. 33.[18] This argument

6    that class proceedings are indispensable cannot be squared with *Scott*, which disavowed a *per se*

7    rule against class waivers. *See* page 7, *supra*. In Washington, unconscionability turns on "the

8    facts of the particular case" (*Scott*, 161 P.3d at 1009 n.7), not "hypothetical" situations (*Sammy*

9    *Enters. v. O.P.E.N. Am., Inc.*, 2008 WL 2010357, at *7 (Wash. Ct. App. May 12, 2008)).[19]

10    Even if the interests of non-parties such as absent class members were relevant, they "do

11    not fare as well" as those who arbitrate under ATTM's provision. *Laster*, 2008 WL 5216255, at

12    *11. Plaintiffs assume that class actions make all class members whole at no cost (Opp. 43–44),

13    but the truth is far from that. About four-fifths of class actions are not certified; of the remaining

14    20%, the overwhelming majority settle, often for pennies on the dollar (with further reductions

15    for class counsel's fees). Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of*

16    *Forum in Class Action Litigation: What Difference Does it Make?*, 81 NOTRE DAME L. REV. 591,

17    635–36, 638 (2006); *see also* Mem. 16 & n.16.

18    Moreover, the evidence shows that few class members actually benefit from class actions.

19    In some cases—including ones involving Plaintiffs' attorney declarants—fewer than **5%** of class

20    members ultimately received **any recovery at all** from class settlements. *See* Ranlett Dec. ¶¶ 18–

21    416063, at *7–*8 (plaintiff's "reference to the 'seven figure' cost of discovery" to vindicate claim on individual basis did not "meet [his] burden" to "show[] the likelihood of incurring" such "prohibitively expensive" costs).

22    [18]    This assertion is pure speculation, and misguided speculation at that. Contrary to Plaintiffs' contention, few unlawful practices could long survive a wave of arbitrations for which ATTM would bear all of the costs.

23    When (as here) arbitration is not confidential, an "enterprising attorney" can "use prior, successful arbitration awards when bringing new claims that require identical presentations of proof, as well as make known to potential clients her many victories." *Carideo*, 520 F. Supp. 2d at 1247; *accord Cruz*, 2008 WL 4279690, at *4 ("[T]he Court

24    disagrees with plaintiffs' assertion that absent * * * a Rule 23 type notice, AT&T will be able to continue its alleged illegal practices," because the "agreement does not require consumers to execute a confidentiality agreement, thereby allowing consumers the option of disseminating the information in the manner of their choosing.").

25    

26    [19]    *Accord Pleasants v. Am. Express Co.*, 541 F.3d 853, 859 (8th Cir. 2008) (under Missouri law, "whether other consumers have elected to arbitrate claims under other contracts is not material"); *Cline v. H.E. Butt Grocery*

27    *Co.*, 79 F. Supp. 2d 730, 733 (S.D. Tex. 1999) (rejecting unconscionability challenge because "[p]laintiff offers no information as to * * * *his* ability to pay" (emphasis added); *West v. Henderson*, 278 Cal. Rptr. 570, 576 (Ct. App. 1991) (contract was not unconscionable merely because it might be unfair in other, "hypothetical situation[s]").

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 12

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

20.  This figure is in line with other estimates of class action "take rates."[20]   And some cases yielded even lower recovery rates.  For example, in one class action, only 0.67% of class members received a payout.  *Id.* ¶ 11 (citing *DeLoach v. Shaver Auto Center* (Cal. Super. Ct. San Bernardino Cty., filed Oct. 17, 2003)).  In another, only 0.70% of class members received any benefit.  *Id.* ¶ 13 (citing *Luna v. Corona Cars, Inc.* (Cal. Super. Ct. Riverside Cty. Oct. 30, 2007)).  And in a third case, the take rate was ***zero*** because every filed claim was rejected— meaning that only the plaintiffs' counsel recovered under the settlement.  *Id.* ¶ 12 (citing *Gutierrez v. Center Chevrolet* (Cal. Super. Ct. San Bernardino Cty. Oct. 10, 2007)).  In short, the vast majority of consumers take absolutely nothing from such settlements.

This is not to say that all class actions always lack value.  But to the individual consumer, it often seems that way.  Indeed, ***most small consumer claims are not amenable to class treatment***.  They are too fact-bound, and do not involve questions common to a class.  *See, e.g.,* Rossman Dep. 112:22–113:4, 113:23–114:3 (describing fraud claims and suits for actual damages as less amenable to class treatment).  Without ATTM's arbitration provision, these customers would be ***without recourse***.[21]   Faced with the choice between subsidized individual arbitration and class actions from which very few people obtain any recovery at all, "[a] reasonable consumer may well prefer" ATTM's arbitration provision.  *Laster*, 2008 WL 5216255, at *12.[22]   And, for the reasons we have discussed, arbitration under ATTM's provision

---

[20]     *See* Mem. 14 n.12; *see also, e.g., Palamara v. Kings Family Rests.*, 2008 WL 1818453, at *2 (W.D. Pa. Apr. 22, 2008) ("approximately 165 class members" out of 291,000 "had obtained a voucher" under the settlement, yielding a take rate under 0.06%); *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083, at *2 (N.D. Cal. Jan. 19, 2008) ("less than one percent of the class chose to participate in the settlement"); *Moody v. Sears, Roebuck & Co.*, 2007 WL 2582193, at *5 (N.C. Super. Ct. May 7, 2007) ("only 337 valid claims were filed out of a possible class of 1,500,000," yielding a take rate of just over 0.02%), *rev'd*, 664 S.E.2d 569 (N.C. Ct. App. 2008).

[21]     *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) (without arbitration, "the typical consumer who has only a small damage claim (who seeks, say, the value of only a defective refrigerator or television set)" would be left "without any remedy but a court remedy, the costs and delays of which could eat up the value of an eventual small recovery").

[22]     The 2006 arbitration provision offers real benefits to both sides and is not "one-sided."  Opp. 35.  It obliges ATTM to engage in binding arbitration, to pay for the proceedings, and to pay a minimum of $5,000, plus double attorneys' fees, if the arbitral award exceeds its last settlement offer.  Plaintiffs ignore these obligations, arguing that ATTM rarely brings class actions against its customers, and so is not constrained by a class waiver.  Opp. 35.  But Washington does not require contracting parties to bear exact mirror-image obligations.  *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 767 n.16 (Wash. 2004).  For example, customers do not need to provide ATTM with phone service.  In any event, the FAA would preempt any requirement that all obligations in an arbitration provision be perfectly mutual.  *See, e.g., Easter v. CompuCredit Corp.*, 2009 WL 499384, at *3 (W.D. Ark. Feb. 27, 2009).

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 13

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    constitutes a "situation[] where a class action waiver would not prevent a consumer from

2    vindicating his or her substantive rights." *Scott*, 161 P.3d at 1009 n.7. Accordingly, it is not

3    substantively unconscionable under Washington law.

### 2. The Washington Plaintiffs' Arbitration Agreements Are Not Procedurally Unconscionable.

4    Plaintiffs argue that their arbitration agreements are procedurally unconscionable under

6    Washington law for four reasons: (1) the arbitration clause was non-negotiable; (2) AWS had

7    greater "bargaining power"; (3) "90 percent" of other wireless carriers now require individual

8    arbitration; and (4) the arbitration clause was inadequately disclosed. Opp. 37–39.

9    The Washington Supreme Court has squarely rejected Plaintiffs' first two arguments.

10   *Zuver* held that "adhesion contract[s]" are "not necessarily * * * procedurally unconscionable"

11   and "that unequal bargaining power * * * will not, standing alone, justify a finding of procedural

12   unconscionability." 103 P.3d at 760–61. Instead, the "key inquiry" is "whether" Plaintiffs

13   "lacked meaningful choice." *Id.* at 761. The court held that giving an employee 15 days to

14   consider an agreement that included an arbitration provision was sufficient to avoid procedural

15   unconscionability. *See id. A fortiori*, the 30 days in which Plaintiffs here could cancel without

16   penalty were more than sufficient. *See also Huang v. Wash. Mut. Bank*, 2008 WL 4102918, at

17   *4 (W.D. Wash. Aug. 25, 2008) (finding one month "adequate"). Moreover, although Plaintiffs

18   object that "90 percent" of other carriers *now* require individual arbitration, they do not deny that

19   when Frerker and the Shulmans activated service years ago, other carriers did not. *See* Mem. 39.

20   Plaintiffs' final argument (Opp. 38), which is based on the declaration of marketing

21   professor Michael Kamins, is that AWS communicated its arbitration clause so as to reduce "the

22   probability that the average consumer would * * * cognitively process it." Kamins Dec., Dkt.

23   #148 ¶ 16.[23] But Frerker's AWS Welcome Guides notified her at the top of the second or third

---

23    In places, Dr. Kamins strains credibility to the breaking point in order to support the arguments of his sponsors. For example, he contends that AWS concealed the requirement that arbitration be conducted on an individual basis, by virtue of being "the nation's most admired telecommunications company" (Kamins Dec. ¶ 9) and by placing the tag line "Welcome to the Freedom of Wireless" on some Welcome Guides, which he reads to signal "that rights of redress would not be restricted in the service contract" (*id.* ¶ 8). On this logic, presumably, the "freedom of wireless" would also mean that customers would not have to pay anything for their service—an equally inane proposition. Unsurprisingly, Dr. Kamins confirmed that he performed no studies or surveys to support his

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 14

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

page that she was accepting the terms of service unless she cancelled within 30 days. Hennessy Dec., Dkt. #61 Ex. 8, at 3; Ex. 19, at 2. The first page of those terms and conditions of service in Frerker's and the Shulmans' Welcome Guides identified the arbitration provision in a list of key provisions, and the arbitration provision itself, which is in the same size font as the other terms, is captioned in boldface. *Id.* Ex. 8, at 32; Ex. 10, at 9; Ex. 19, at 60. Dr. Kamins nonetheless objected that the arbitration clause should have been at the beginning of the booklet and in a larger font. Kamins Dec. ¶ 8. And he also believes that store employees should be required to tell customers about the arbitration provision in particular. Kamins Dep. 116:6–20.[24] But Washington's procedural unconscionability law does not require an arbitration provision to be more prominent than other terms—much less to the extent Dr. Kamins demands. Indeed, the FAA would preempt any such "special prominence" requirement. *E.g., Doctors' Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684, 687 (1996) (a "State's law [that] conditions the enforceability of arbitration agreements on" disclosing the arbitration requirement in "underlined capital letters on the first page of the contract" "directly conflicts with § 2 of the FAA[.]").

### C. The Arbitration Agreements Are Enforceable Under The Laws Of The Eight Other States.

Plaintiffs do not meaningfully challenge our detailed showing that agreements of the sixteen non-Washington plaintiffs are enforceable under the laws of their eight home states. Mem. 9–37. Instead, they cite a few cases in footnotes (Opp. 35–36 nn.23–35)—many of which we already have discussed—and request another round of briefing if the Court declines to apply Washington law (Opp. 28 n.19). That request should be rejected. This Court authorized overlength briefing specifically so that the parties could address the "many different states'

---

unorthodox opinions. Kamins Dep. 76:3–14. Dr. Kamins criticizes Cingular's contracts on similar grounds, although Plaintiffs do not argue in their opposition that their arbitration agreements with Cingular are procedurally unconscionable. In any event, Dr. Kamins' analysis of Cingular's contracts involves glaring errors—overlooking, for example, the fact that customers signed Cingular contracts immediately above an acknowledgment that they agreed to Cingular's terms of service, including "arbitration." *E.g.*, Hennessy Dec. Ex. 6. Indeed, Dr. Kamins explained that he thought it "surprising" that a consumer who signs under such a statement should "be excused from the terms of the contract because [he or she] didn't read it." Kamins Dep. 83:19–84:7.

[24]    Dr. Kamins conceded that "[i]n terms of where [the arbitration provision] appears in the text of the subcomponent service agreement [within the AWS Welcome Guide], it is not buried." Kamins Dep. 100:23–25. He also conceded that the first paragraph of Cingular's Terms of Service booklet states that "[t]his agreement requires the use of arbitration to resolve disputes" and that many contract terms properly should precede the arbitration provision in that booklet. *Id.* 102:10–111:20.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 15

1  positions." Order, Dkt. #50, at 1–2. Plaintiffs have had a full and fair opportunity to do so.

2  Moreover, to the extent Plaintiffs have addressed the laws of their various home states, they are

3  mistaken in asserting that ATTM's provision is unenforceable under those laws.

4      **1. Alabama.**   Plaintiffs cite only one Alabama decision. Opp. 36 n.25 (citing *Leonard*

5  *v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002)). As we have explained (Mem. 10–11), the

6  contract in *Leonard* required the plaintiffs to pay $1,000 in fees to arbitrate a claim worth $500

7  and placed limitations on a consumer's recovery. 854 So. 2d at 535–38. ATTM's 2006

8  provision has none of the specific terms that *Leonard* found objectionable, and is far more pro-

9  consumer than the two arbitration provisions the Alabama Supreme Court later upheld (and the

10  *seven* provisions upheld by federal district courts in Alabama). *See* Mem. 11–12. Thus, it is not

11  substantively unconscionable under Alabama law.[25]

12      **2. Arizona.**   Plaintiffs cite a federal decision that invalidated a payday lender's

13  arbitration provision on the ground that it would "immunize[]" the lender from liability for a

14  $100 claim. Opp. 36 n.26 (citing *Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1288–89

15  (D. Ariz. 2007)). But Plaintiffs do not respond to our showing (Mem. 16–17) that ATTM's 2006

16  provision addresses that concern, entitling Arizona plaintiff Melendez to recover $5,000 and

17  double attorneys' fees in arbitration if he does better than ATTM's settlement offer. Moreover,

18  the provision is more pro-consumer than provisions that other courts have ***upheld*** under Arizona

19  law—all of which lacked the premiums made available by ATTM's provision. *See* Mem. 16–17

20  (citing cases). Indeed, the Arizona Court of Appeals has upheld an arbitration agreement

21  because the plaintiffs' share of costs was only a small fraction of the amount in controversy and

22  less than "the amount they would likely have to pay in litigation expenses if arbitration were not

23  available." *See Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1056 (Ariz. Ct. App. 2005).

24  _____

[25]     Alabama law requires Knott to prove both procedural and substantive unconscionability. *Blue Cross Blue*
25  *Shield v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005). As noted, Knott cannot show substantive unconscionability; nor
   can he show procedural unconscionability. Unlike in *Leonard*, where the plaintiff could not have obtained the
26  desired services from a competitor without agreeing to arbitrate (854 So. 2d at 538), Knott had a choice: At least
   three carriers in his area did not require individual arbitration when he first subscribed to AWS service. Mem. 10.
27  Because Alabama requires that plaintiffs alleging procedural unconscionability have "actually 'shop[ped] around'"
   for an alternative agreement (*Leeman v. Cook's Pest Control*, 902 So. 2d 641, 647 (Ala. 2004)), this undisputed fact
   is fatal to any argument that Knott's agreement is unconscionable under Alabama law.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 16

1    Here, Melendez can arbitrate for free.  As such, ATTM's provision is not unconscionable.

2    **3.  California.**  Plaintiffs cite a series of cases concerning AWS's and ATTM's 2003

3    arbitration provisions, such as *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976

4    (9th Cir. 2007).  *See* Opp. 35 n.23.  But as we explained (Mem. 24–26), ATTM's 2006 provision

5    satisfies the requirement that *Shroyer* and the other cases imposed—that customers have a

6    "potential for individual *gain*" in arbitration (498 F.3d at 986 (emphasis in original))—by

7    providing that California customers who receive more in arbitration than ATTM's last settlement

8    offer will receive a minimum award of $7,500, plus double attorneys' fees.[26]

9    True, two federal district courts have held—in decisions currently on appeal—that

10   ATTM's 2006 provision is unconscionable under California law because it prohibits class

11   arbitration.  *See Laster*, 2008 WL 5216255, at *13–*14; *Stiener v. Apple Computer, Inc.*, 556 F.

12   Supp. 2d 1016 (N.D. Cal. 2008), *appeal pending*, No. 08-15612 (9th Cir.).[27]  But as the *Laster*

13   court recognized, the *Stiener* court "did not address the effect of [ATTM's] Premium as an

14   incentive for individuals to pursue the *informal claims process*" that permits customers to obtain

15   relief without going to the effort of arbitrating at all.  *Laster*, 2008 WL 5216255, at *11 n.8

16   (emphasis in original).  Indeed, the *Laster* court found that "a reasonable customer may well

17   prefer" ATTM's provision to class actions.  *Id.* at *12.  The court further concluded that a

18   consumer would have "sufficient incentive" to pursue claims for "small damages" and that the

19   second prong of *Discover Bank*'s unconscionabilty test thus was not satisfied.  *Id.* at *12–*14

20   (citing *Discover Bank v. Super. Ct.*, 113 P.3d 1100 (Cal. 2005)).  The *Laster* court was correct to

21   conclude that the second prong of *Discover Bank* had not been met, but it erred in nonetheless

22

23   [26]     Plaintiffs also cite *Gentry v. Superior Court*, 165 P.3d 556, 563 (Cal. 2007), *cert. denied*, 128 S. Ct. 1743 (2008), which involved unwaivable statutory rights, but Plaintiffs invoke no such rights here.  Mem. 25 n.27.

     [27]     In addition, another federal district judge has held that, under California law, ATTM's December 2006
24   revision to one of its customer's arbitration agreements is "procedurally unconscionable" and ineffective unless the
     customer affirmatively accepts it.  *See Kaltwasser v. Cingular Wireless LLC*, 543 F. Supp. 2d 1124, 1130 n.5 (N.D.
25   Cal. 2008), *appeal pending*, No. 08-15962 (9th Cir.).  That court—in conflict with the *Laster* court—overlooked
     *Badie*, which holds that modifications made pursuant to change-in-terms clauses such as the ones in ATTM's
26   customer agreements are enforceable so long as they are "clearly related to a matter addressed in the original
     contract" and are "reasonable."  79 Cal. Rptr. 2d at 281, 285.  Both requirements are met here:  The December 2006
27   modifications "clearly related to" the original arbitration provisions in ATTM's customers' service agreements and
     are "reasonable" because they are entirely to the customers' benefit.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 17

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1  declining to enforce ATTM's provision on asserted public policy grounds.[28]

2      **4. Florida.**  Plaintiffs cite two Florida decisions that turned on remedial restrictions not

3  present here.  *See* Mem. 28 n.29 (discussing *S.D.S. Autos, Inc. v. Chrzanowski*, 976 So. 2d 600

4  (Fla. Ct. App. 2007), and *Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. Dist. Ct. App. 1999)).

5  They also cite an unpublished Eleventh Circuit decision, *Rollins, Inc. v. Garrett*, 176 F. App'x

6  968 (11th Cir. 2006), which simply cited *Powertel* to support the proposition that arbitrators have

7  the power to construe an arbitration agreement that does not expressly forbid class arbitration to

8  permit it.  176 F. App'x at 969.[29]  None of these decisions abrogates *Fonte v. AT&T Wireless*

9  *Services, Inc.*, 903 So. 2d 1019 (Fla. Dist. Ct. App. 2005), which upheld AWS's arbitration

10  clause.  *A fortiori*, ATTM's more pro-consumer 2003 and 2006 provisions are also enforceable.

11      Indeed, a Florida federal court recently expressly held that ATTM's 2006 provision is

12  fully enforceable under Florida law.  *See Cruz v. Cingular Wireless, LLC*, 2008 WL 4279690, at

13  *3–*4 (M.D. Fla. Sept. 15, 2008), *appeal pending*, No. 08-16080-CC (11th Cir.).  The court

14  explained that "Florida courts have held" that Florida's consumer-protection statute does not

15  "'confer a non-waivable right to class representation'" and rejected the very same arguments that

16  Plaintiffs assert here—*i.e.*, that the unavailability of class relief and "Rule 23 type notice" would

17  "hinder[] the remedial purposes of" Florida's consumer-protection statute.  *Id.* at *3–*4.  Under

18  *Fonte* and *Cruz*, ATTM's 2006 arbitration provision is fully enforceable.[30]

19      **5. Illinois.**  Plaintiffs cite *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 259 (Ill.

20  2006), which invalidated a much earlier and less pro-consumer version of ATTM's arbitration

21  provision than any version at issue here.  *Id.* at 275.  As we previously discussed (Mem. 29-32),

22

---

23  [28]    The *Laster* court erroneously believed that ATTM was required by *Discover Bank*'s third prong to prove
that arbitration would deter misconduct as effectively as class actions.  2008 WL 5216255, at *13–*14.  But
*Discover Bank*'s test is conjunctive, not disjunctive.  The court also improperly placed the burden of proof on
24  ATTM.  Moreover, California law does not require equivalence with class actions (and cannot do so consistent with
the FAA).  ATTM has made all of these arguments in the pending appeal.

25  [29]    In any event, in an unpublished decision that actually considers the question at issue here, the Eleventh
Circuit held that "[a]n arbitration agreement precluding a class-wide remedy is not unconscionable" under Florida
26  law.  *Salter v. Citigroup, Inc.*, No. 03-16268, slip op. at 5 (11th Cir. Apr. 27, 2004) (attached).

27  [30]    Another court has since held that "the class action waiver provision" in an arbitration provision that is less
pro-consumer than ATTM's "is not substantively unconscionable" under Florida law.  *La Torre v. BFS Retail &*
*Commercial Operations, LLC*, 2008 WL 5156301, at *5 (S.D. Fla. Dec. 8, 2008).

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 18

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

*Kinkel* specifically relied on features not present in the 2003 and 2006 provisions that Gilker and Rudich received.  *See* 857 N.E.2d at 266 (noting that "fee information" was not apparent from the agreement); *id*. at 275 (objecting to a $125 arbitration fee and a confidentiality clause).

Moreover, two federal courts have held that the arbitration provisions of AWS and T-Mobile, both of which require individual arbitration, are enforceable under *Kinkel* because they cap the consumer's costs for arbitrating claims of under $1,000 at $25.  *See Crandall v. AT&T Mobility, LLC*, 2008 WL 2796752, at *4–*5 (S.D. Ill. July 18, 2008) (AWS); *accord In re Jamster*, 2008 WL 4858506, at *5–*6 (T-Mobile).  Here, Gilker and Rudich may arbitrate for free.  Indeed, the *Crandall* court held that, as a matter of Illinois law, the mere "inability to pursue the[] claims on a class-wide basis" does not entitle consumers "to throw out the [arbitration] clause as being inherently unfair."  2008 WL 2796752, at *5.  Rather, Plaintiffs must prove that the "expenses that they necessarily and definitely would incur" on an individual basis "would make arbitration prohibitive."  *Id.*  That Gilker and Rudich cannot do, because they may arbitrate for free, would be entitled to statutory attorneys' fees if they prevail on their claim, and would receive a minimum payment of $10,000, plus double attorneys' fees if the arbitrator awards them more than ATTM's last settlement offer.  *See* Mem. 33.

**6. Missouri.**    Plaintiffs rely upon two cases.  Opp. 36 n.30 (citing  *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300 (Mo. Ct. App. 2005); *Doerhoff v. Gen. Growth Props., Inc.*, 2006 WL 3210502 (W.D. Mo. Nov. 6, 2006)).  *Whitney* involved an agreement that both required individual arbitration and limited remedies; as we have discussed (Mem. 34–35), *Whitney* was distinguished by a Missouri court that held ATTM's 2003 clause enforceable under Missouri law.  *Blitz v. AT&T Wireless Servs., Inc.*, 2005 WL 6177327 (Mo. Cir. Ct. Nov. 28, 2005).  *Doerhoff* involved an agreement that saddled the consumer with all "filing, administrative, and hearing fees for any claim initiated."  *Doerhoff*, 2006 WL 3210502, at *6.  But under ATTM's provision, customers arbitrate for free. Mem. 4–5.  The Eighth Circuit and Missouri federal district courts have repeatedly held that agreements to arbitrate on an individual basis are enforceable under Missouri law even without the special incentives included in

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 19

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    ATTM's 2006 provision.  *See Pleasants v. Am. Express Co.*, 541 F.3d 853, 857–59 (8th Cir.

2    2008) ("Enforcing the agreement under the circumstances of this case * * * does not lead to an

3    unconscionable result" because the consumer's "total recovery" in arbitration, where remedies

4    are "not limit[ed]" by the agreement, "would likely exceed the cost of pursuing her claim.").[31]

5        **7.  New Jersey.**    The only New Jersey decision that Plaintiffs cite (Opp. 36 n.31) is

6    *Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88 (N.J. 2006), which we

7    addressed in our opening memorandum (at 34–36).  Two federal courts have recognized that

8    *Muhammad* permits agreement to arbitrate on an individual basis when claims are on the scale of

9    the $5,000 minimum payment provided for under ATTM's 2006 provision.  *See Davis v. Dell,*

10   *Inc.*, 2007 WL 4623030, at *7 (D.N.J. Dec. 28, 2007) ($1,000 to $3,000); *Jones v. The Chubb*

11   *Inst.*, 2007 WL 2892683, at *4 (D.N.J. Sept. 28, 2007) (damages of $6,551.26).[32]

12       **8.  Virginia.**    Plaintiffs do not contend that a requirement that arbitration be conducted

13   on an individual basis is unconscionable under Virginia law.

14   **III.    THE FAA WOULD PREEMPT ANY STATE-LAW RULE THAT WOULD DEEM
         ATTM'S 2006 ARBITRATION CLAUSE UNCONSCIONABLE.**

15       Plaintiffs largely miss the point of our express-preemption arguments.  Moreover, they

16   overlook the Supreme Court's recent decision in *Preston v. Ferrer*, 128 S. Ct. 978 (2008), which

17   supersedes the Ninth Circuit decisions rejecting ATTM's conflict-preemption argument.

18       **A.    Express Preemption.**

19       Plaintiffs contend that, in three cases, the Ninth Circuit has rejected our argument that the

20   FAA expressly preempts any state-law holding that the 2006 arbitration provision is

21   [31]    *See also, e.g., Kates v. Chad Franklin Nat'l Auto Sales N., LLC*, 2008 WL 5145942, at *5 (W.D. Mo. Dec.
22   1, 2008); *Guiterrez v. State Line Nissan, Inc.*, 2008 WL 3155896, at *3–4 (W.D. Mo. Aug. 4, 2008); *Bass v. Carmax
     Auto Superstores, Inc.*, 2008 WL 2705506, at *3 (W.D. Mo. Jul. 9, 2008).  One Missouri court has held
23   unconscionable a requirement of individual arbitration in a payday loan contract, based on a "sharpened inquiry"
     inspired by the "dire personal economic circumstances" that compelled borrowers to assent to arbitration.  *Woods v.
     QC Fin. Servs., Inc.*, 2008 WL 5454124, at *5 (Mo. Ct. App. Dec. 23, 2008).  Here, because Franks was not under a
24   "great deal of economic compulsion" to obtain phone service (*id.*), he must show greater substantive
     unconscionability to invalidate ATTM's 2006 provision.  He cannot do so:  The special incentives made available
25   by that provision—which the payday lender's provision lacked—prevent ATTM from using individual arbitration to
     "deliberately cheat large numbers of consumers out of individually small sums of money."  *Id.* at *7.

26   [32]    The Third Circuit has suggested that an agreement to arbitrate on an individual basis is unenforceable under
     *Muhammad* if the individual consumers' claims are of such "low monetary value" and of a "nature" that the
     consumers lack "adequate incentive" to pursue them in individual arbitration.  *Homa v. Am. Express Co.*, 2009 WL
27   440912, at * 3 n.1, *6 & n.2 (3d Cir. Feb. 24, 2009).  Here, by contrast, the New Jersey plaintiff Krausse stands to
     recover $5,000 and double attorneys' fees if she bests ATTM's settlement offer in arbitration.

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 20

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1    unconscionable.  Opp. 39.  But as we explained (Mem. 42-43), each of those decisions involved

2    less pro-consumer arbitration clauses.  *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1221 (9th

3    Cir.), *cert. denied*, 129 S. Ct. 45 (2008); *Shroyer*, 498 F.3d at 988; *Ting v. AT&T*, 319 F.3d 1126,

4    1150 n.15 (9th Cir. 2003).  Even if those rulings were simply "refinement[s]" (*Shroyer*, 498 F.3d

5    at 987) of California's generally applicable "shock-the-conscience" standard for

6    unconscionability (Mem. 43), the same cannot be said of a ruling that ATTM's **2006 provision** is

7    unconscionable.  ATTM's 2006 provision is uniquely pro-consumer.  *Cf. Strawn v. AT&T*

8    *Mobility, Inc.*, 2009 WL 154433, at *5 n.6 (S.D.W. Va. Jan. 20, 2009) (describing ATTM's

9    provision as "unusually consumer-centered").  To say that such a provision "shocks the

10   conscience" is to drain the term of any meaning.  Even if, as Plaintiffs say, the provision were

11   less effective in resolving complex class disputes, it provides a superior method of addressing the

12   much more common individualized disputes.  As one California federal judge has observed, "a

13   reasonable customer may well prefer" such a trade-off.  *Laster*, 2008 WL 5216255, at *12.

14   Accordingly, any state-law ruling that the 2006 provision is unconscionable impermissibly

15   distorts the relevant states' generally applicable unconscionability standards.[33]

16        Plaintiffs also assert that FAA preemption does not apply because they are challenging

17   ATTM's class waiver, not the arbitration requirement itself.  Opp. 40.  But the "lack of class

18   relief," like the lack of a jury, is a "unique characteristic[] of the arbitration process."

19   Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 Vand. L. Rev.

20   729, 776 (2006).  To hold that it is unconscionable to conduct arbitration on an individual basis

21   (or without a jury) would "just repackage[] the tired assertion that arbitration should be

22   disparaged as second-class adjudication."  *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d

23   903, 906 (7th Cir. 2004).  True, other kinds of contract terms, such as forum-selection clauses,

24   may sometimes operate to bar class relief.  Opp. 41 n.41.  But as a practical matter, a rule against

---

25   [33]    Plaintiffs misread (Opp. 40) the Court's statement that the FAA "has no express preemptive provision."
26   *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989).  The Court was merely
     noting that the FAA permits generally applicable contract defenses, including unconscionability.  The Court has
     clarified that Section 2 does preempt state laws (including unconscionability) that single out arbitration clauses for
27   suspect status.  *See, e.g.*, *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *see also Preston*, 128 S. Ct. at 983 ("The
     FAA's displacement of conflicting state law is now well-established * * *.") (internal quotation marks omitted).

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 21

Kipling Law Group pllc
3601 Fremont Ave N, Suite 414
Seattle, Washington 98103
telephone (206) 545-0345
fax (206) 545-0350

1   class waivers is a proxy for a rule against arbitration agreements, just as a rule against jury

2   waivers might apply equally to courts and arbitration but would still be preempted by the FAA.

3   Finally, Plaintiffs argue that there can be no preemption because the Supreme Court

4   "determined" in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), "that class actions

5   are *not* incompatible with arbitration."  Opp. 41.[34]  But the issue *Bazzle* confronted was whether

6   parties may *agree* to class arbitration.  *See* 539 U.S. at 454 (remanding for arbitrator to decide

7   whether the agreement authorized class procedures).  The FAA does not prevent parties from

8   agreeing to cumbersome or self-defeating arbitration procedures if they wish.  *See Volt*, 489 U.S.

9   at 478).  By contrast, the issue here is whether states may refuse to enforce the many arbitration

10  agreements that intentionally preclude one such cumbersome procedure—class-wide

11  adjudication.  Such a rule is as hostile to arbitration—and just as preempted by the FAA—as a

12  requirement that arbitration clauses offer the full panoply of discovery procedures available in

13  court.  *Cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("[T]hat the

14  discovery allowed in arbitration is more limited than in the federal courts" is part and parcel of

15  agreement to "'trade[] the procedures and opportunity for review of the courtroom for the

16  simplicity, informality, and expedition of arbitration.'") (quoting *Mitsubishi Motors Corp. v.

17  Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

18  **B.    Conflict Preemption.**

19  We previously preserved an argument that the Ninth Circuit had rejected (*see Shroyer*,

20  498 F.3d at 987–93; *Lowden*, 512 F.3d at 1219–22)—that requiring arbitration agreements to

21  include class procedures conflicts with the purposes of the FAA.  Mem. 41.  Since then, the

22  Supreme Court's decision in *Preston* has superseded *Shroyer* and *Lowden*.

23  In *Preston*, the Supreme Court held that the FAA preempted a California statute granting

24  primary jurisdiction in certain disputes to the state's Labor Commissioner.  128 S. Ct. at 981.  In

---

[34]    Plaintiffs point out that a number of class arbitrations are pending before the AAA (Opp. 41 n.42), but that is only because *Bazzle* unexpectedly gave arbitrators the authority to decide whether an arbitration agreement that is silent on class arbitration permits it.  *See* Meredith W. Nissen, *Class Action Arbitration*s, 11 DISP. RESOL. MAG. 19, 19 (Summer 2005).  In response to *Bazzle*, businesses have hastened to include express, non-severable class waivers in their arbitration provisions.  Moreover, at least one major company—Comcast—has abandoned arbitration in its contracts with its millions of California customers.  *See* http://www.comcast.net/terms/subscriber/.  The threat to the FAA posed by state-law rules restricting individual arbitration is thus very real.

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

an effort to salvage the statute, the respondent described the law as an exhaustion requirement, which "merely postpon[ed] arbitration until after the Labor Commissioner has exercised her primary jurisdiction." *Id.* at 985. He argued that the delay imposed by "[r]equiring initial reference of the parties' dispute to the Labor Commissioner" would apply equally to arbitration and litigation, and that such equal treatment was consistent with the FAA. *Id.* at 986.

The Court disagreed, explaining that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Id.* (quoting *Mitsubishi*, 473 U.S. at 633). This objective "would be frustrated" by the California statute because "[r]equiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy." *Id.*

Similar reasoning applies here. Engrafting class proceedings onto individual arbitration would surely "hinder speedy resolution" of Plaintiffs' individual disputes. Certification proceedings alone are far more onerous and time-consuming than the simple exhaustion requirement rejected in *Preston*. Even worse, insisting on class treatment would force companies to abandon arbitration altogether. Few businesses could afford the risk of class arbitration, which lacks the safety valve of judicial review of an erroneous—yet potentially massive—class-wide award. Nothing could more clearly "frustrate the purpose" of the FAA. *Livadas v. Bradshaw*, 512 U.S. 107, 116 (1994).

## CONCLUSION

The Court should compel Plaintiffs to pursue their claims in individual arbitration or small claims court and dismiss this consolidated action.

s/ Michael E. Kipling
Michael E. Kipling, WSBA #7677
KIPLING LAW GROUP PLLC
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
206.545.0346 (direct line)
206.545.0350 (fax)
E-mail: kipling@kiplinglawgroup.com

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 23

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

William F Cronin, WSBA #8667
CORR CRONIN MICHELSON BAUMGARDNER
    & PREECE
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154-1051
206.625.8600 (
206.625.0900 (fax)
E-mail:  wcronin@corrcronin.com

Evan M. Tager (admitted *pro hac vice*)
Archis A. Parasharami (admitted *pro hac vice*)
Kevin S. Ranlett
MAYER BROWN LLP
1909 K Street, NW
Washington, DC 20006
202.263.3000
202.263.3300 (fax)
E-mail:  etager@mayerbrown.com
E-mail:  aparasharami@mayerbrown.com

***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Leslie A. Bailey**
  lbailey@tlpj.org
- **Karl P. Barth**
  kbarth@lmbllp.com
- **Lincoln C. Beauregard**
  lincolnb@connelly-law.com
- **Neal S. Berinhout**
  NB2520@att.com
- **F. Paul Bland, Jr.**
  pbland@tlpj.org
- **Stephen L. Bulzomi**
  SBulzomi@MessinaLaw.com
- **Richard J. Burke**
  rich@richardjburke.com
- **Kevin Coluccio**
  kc@stritmatter.com
- **John R. Connelly, Jr.**
  jconnelly@connelly-law.com
- **William F. Cronin**
  wcronin@corrcronin.com
- **Jeffrey P. Foote**
  jfoote@footelaw.com

- **Stephen M. Garcia**
  sgarcia@lawgarcia.com
- **John W. Hathaway**
  jhathaway@seanet.com
- **Esther L. Klisura**
  eklisura@pswplaw.com
- **Archis A. Parasharami**
  aparasharami@mayerbrown.com
- **Pamela Pressley**
  pam@consumerwatchdog.org
- **Harvey Rosenfield**
  harvey@consumerwatchdog.org
- **Bruce L. Simon**
  bsimon@pswplaw.com
- **Paul L. Stritmatter**
  pauls@stritmatter.com
- **William M. Sweetnam**
  wms@sweetnamllc.com
- **Evan M. Tager**
  etager@mayerbrown.com
- **Ronald F. Webster**
  ron@ronwebsterlaw.com

DATED this 11th day of March, 2009.

s/ Michael E. Kipling
Michael E. Kipling, WSBA #7677
KIPLING LAW GROUP PLLC
3601 Fremont Avenue N., Suite 414
Seattle, WA 98103
206.545.0346 (direct line)
206.545.0350 (fax)
E-mail:  kipling@kiplinglawgroup.com

*Counsel for Defendants*

REPLY IN SUPPORT OF DEFENDANTS' AMENDED
MOTION TO COMPEL ARBITRATION (C06-0944 RSM)
Page 25

KIPLING LAW GROUP PLLC
3601 FREMONT AVE N, SUITE 414
SEATTLE, WASHINGTON 98103
telephone (206) 545-0345
fax (206) 545-0350

# Attachment

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
┌─────────────────────────────┐
│         FILED               │
│  U.S. COURT OF APPEALS      │
│    ELEVENTH CIRCUIT         │
│                             │
│      APR 2 7 2004           │
│                             │
│    THOMAS K. KAHN           │
│        CLERK                │
└─────────────────────────────┘
```

No. 03-16268
Non-Argument Calendar

D.C. Docket No. 03-00020-CV-4-SPM

DEBORAH SALTER, et al,

Plaintiffs-Appellants,

versus

CITIGROUP, INC. et al,

Defendants-Appellees.

Appeal from the United States District Court for the
Northern District of Florida

(April 27, 2004)

Before **BIRCH** and **DUBINA**, Circuit Judges, and **SHAPIRO***, District Judge.

PER CURIAM:

Plaintiffs Eugene Monroe, Jr., Dewana Monroe, Deborah Salter and Essie

---

*Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

M. Maxwell ("plaintiffs") appeal the district court order compelling arbitration and its order denying rehearing and an evidentiary hearing.

## I. BACKGROUND

Each of the plaintiffs borrowed several thousand dollars from one or more of the defendants[1] in the sub-prime market[2] for mortgage backed loans. Plaintiffs filed a class action complaint alleging unfair, unlawful, deceptive and discriminatory trade practices in relation to the loans. They sought relief under the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 et seq. Fla. Stat., and Section 805 of the Fair Housing Act, 42 U.S.C. § 3605.

Each loan contract contained an arbitration agreement set apart from the rest of the loan document; the arbitration agreements were signed separately from the loan agreements by each plaintiff. In their complaint, plaintiffs asked the trial court to rescind any and all arbitration agreements entered by the parties.

---

[1]The defendants are: Citigroup, Inc.; Citifinanical Equity Services, Inc., f/k/a Commercial Credit Plan, Inc., and Commercial Credit Consumer Services, Inc.; Citifinancial Services, Inc., f/k/a Commercial Credit Plan, Inc., Commercial Credit Loans, Inc., and Commercial Credit Consumer Services, Inc.; Citifinancial, Inc., f/k/a Commercial Credit Corporation; Citifinancial Credit Company; Associate Financial Services of America, Inc.; Associates Corporation of North America; Associates Financial Services Company of Florida, Inc.; and Associates Insurance Company.

[2]Loans that do not meet strict underwriting standards to qualify for prime or "A" credit, are considered sub-prime.

Defendants filed a motion to compel arbitration and to dismiss. Plaintiffs argued that the arbitration provisions should not be enforced because they were unconscionable. The trial court, ruling that the arbitration agreements were not procedurally or substantively unconscionable, granted the motion to compel arbitration and dismissed the action with prejudice. Plaintiffs filed a motion for rehearing and for an evidentiary hearing; the trial court also denied this motion.

## II. STANDARD OF REVIEW

We review the district court order granting the motion to compel arbitration de novo. Davis v. Southern Energy Homes, Inc., 305 F.3d 1268, 1270 (11th Cir. 2002). We review the district court order denying the motion for rehearing and for an evidentiary hearing for abuse of discretion. O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992).

## III. DISCUSSION

The Federal Arbitration Act (FAA) applies to all arbitration agreements involving interstate commerce. Citizens Bank v. Alafabco, Inc., 539 U.S. 52 (2003). Contract defenses recognized under state law, such as fraud, duress, and unconscionability, may be applied to invalidate arbitration agreements. Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002). The state law applied must govern contracts generally and not arbitration provisions specifically. Id.

3

On appeal, plaintiffs again argue that the arbitration agreements are unconscionable. In order to invalidate a contract under Florida law, a court must find that it is *both* procedurally and substantively unconscionable. <u>Powertel, Inc. v. Bexley</u>, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999). The party seeking to avoid the arbitration provision has the burden of establishing unconscionability. <u>Green Tree Fin. Corporation-Alabama v. Randolph</u>, 531 U.S. 79, 91-92 (2000).

Procedural unconscionability involves consideration of the manner in which the contract was entered, the relative bargaining power of the parties, and their ability to know and understand the terms. <u>Powertel</u>, 743 So.2d at 574. To determine whether a contract is procedurally unconscionable, a court must consider whether: (1) the complaining party had a meaningful choice at the time of the contract; (2) the complaining party had a realistic opportunity to bargain regarding the terms of the contract; (3) the terms presented were on a take-it-or-leave-it basis; and (4) the complaining party had a reasonable opportunity to understand the contract. <u>Id.</u>

On appeal, plaintiffs argue that the arbitration agreements are procedurally unconscionable because: (1) the lenders unilaterally prepared the arbitration agreements; and (2) required all of its sub-prime customers to accept the arbitration agreement or forgo financing. The plaintiffs also argue that because

4

they had limited borrowing options, they could not obtain other lenders.  Plaintiffs

also cite the lenders' high pressure sales tactics as evidence of unconscionability.

Plaintiffs' arguments are speculative.  They offer no proof that they

searched for other lenders, or that they would have lost any investment in

equipment or suffer inconvenience if they did.  The plaintiffs also fail to show

they were poorly educated or lacked sophistication when they signed the

agreements and therefore were unable to bargain or have a meaningful choice.   As

the district court found, the arbitration agreements were conspicuous and

separately signed to show affirmative acceptance.  Plaintiffs fail to show that the

arbitration agreements are procedurally unconscionable.

Plaintiffs argue that the agreements are substantively unconscionable

because: (1) they do not allow for class claims; (2) they exempt foreclosure and

repossession actions from the scope of arbitrable claims; and (3) they include

arbitrability as an issue subject to arbitration.  Plaintiffs also object to the fairness

of the confidentiality provisions and the fee splitting provisions.

Parties to arbitration agreements have no legal right to class-wide

arbitration; such a remedy is only available if expressly provided for in the

arbitration agreement.  Randolph v. Green Tree Fin. Corp., 244 F.3d 814,815

(11th Cir. 2001).  An arbitration agreement precluding a class-wide remedy is not

unconscionable.

Plaintiffs also argue on appeal that the arbitration agreements are substantively unconscionable because repossession and foreclosure remedies are excluded from arbitration. Plaintiffs contend that strict mutuality is not satisfied. In Florida, strict mutuality is not required, as long as there is sufficient consideration for the entire agreement. Avid Eng'g, Inc. v. Orlando Marketplace Ltd., 809 So. 2d 1, 3 (Fla. Dist. Ct. App. 2001).

Plaintiffs also argue that the arbitration agreements are substantively unconscionable and unenforceable because the costs would be so great that they would be precluded from effectively bringing a claim in an arbitral forum. A party seeking to avoid an arbitration clause on this ground must show the likelihood, not mere possibility of excessive costs. Musnick v. King Motor Co., 325 F.3d 1255, 1259-60 (11th Cir. 2003); Bess v. Check Express, 294 F.3d 1298, 1303-1304 (11th Cir. 2002). Plaintiffs have produced no evidence that prohibitive costs are likely. Plaintiffs fail to show that the arbitration agreements are substantively unconscionable on this ground.

Finally, taking all of plaintiffs' arguments of unconscionability in their totality, plaintiffs still fail to show that the arbitration agreements are substantively unconscionable. As the district court correctly stated, Florida law defines an unconscionable contract as one that "no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person]

6

would accept on the other." <u>Belcher v. Kier</u>, 558 So. 2d 1039, 1044 (Fla. Dist. Ct. App. 1990).  Plaintiffs have not met their burden in showing the arbitration agreements meet this standard.  Finally, plaintiffs did not produce any evidence that they have any reason to believe they will not have a fair arbitration hearing. Upon <u>de novo</u> review, plaintiffs have not shown that the arbitration agreements are unenforceable on grounds of unconscionability.

Following the district court order to compel arbitration, the plaintiffs filed a motion for rehearing and for an evidentiary hearing.  The decision to alter or amend a judgment is within the sound discretion of the district court and will not be overturned absent abuse of discretion. <u>O'Neal v. Kennamer</u>, 958 F.2d 1044, 1047 (11th Cir. 1992).  An abuse of discretion occurs only if a judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or makes findings of fact that are clearly erroneous.  <u>In re Red Carpet Corp.</u>, 902 F.2d 883, 890 (11th Cir. 1990).  The district court was not in error in concluding plaintiffs had not met their burden of proving the arbitration agreements were procedurally and substantively unconscionable.

## IV. CONCLUSION

Upon review of the record and the parties' briefs we find no reversible error. The arbitration agreements entered by the parties are not unconscionable and are enforceable. The district court dismissal of this action was proper, and its refusal to rehear it was not an abuse of discretion.

**AFFIRMED.**

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia