1
2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

3

| | |
|---|---|
| CONEFF, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> AT&T CORP., et al., <br><br> Defendants. | Consolidated Case No. C06-0944 RSM <br><br> DECLARATION OF KEVIN RANLETT IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT AND TO DISMISS ACTION |

4
5
6
7
8
9
10

I, Kevin Ranlett, hereby declare as follows:

11

1.      I am over 21 years of age and am employed as an attorney by Mayer Brown LLP.

12

The following facts are of my personal knowledge and if called as a witness I could and would

13

testify competently as to their truth.

14

**Alan Mansfield**

15

2.      A true and correct copy (as retrieved from PACER by an attorney under my

16

supervision) of the Opinion and Order Rejecting Class Action Settlement, Dkt. No. 76, *Date v.*

17

*Sony Electronics Inc.*, No. 2:07-cv-15474 (E.D. Mich. Jan. 16, 2009), is attached as **Exhibit 1**.

18

According to that order, Alan Mansfield, who submitted a declaration in this case, participated in

19

*Date* as counsel for the class. *Id.* at 16–17. The order reflects that the proposed settlement

20

would have given $90 cash awards to 234 (*id.* at 8) of the 175,000 class members (*id.* at 3, 7),

21

and would have awarded the rest only credits redeemable at the Sony online store (*id.* at 6–7). In

22

other words, about 0.13% of class members would have received money under the proposed

23

settlement. The named plaintiff would have received $5,000, plus up to $1,600 toward the

24

installation of a new television, and the plaintiffs' attorneys would have received fees of

25

$300,000, plus litigation costs of $25,000. *Id.* at 8.

26
27
28

**A.B. Data**

3.      A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Order of June 16, 2004, Dkt. No. 57, *Bauman v. Superior Financial Corp.*, No. 4:01-CV-00756 (E.D. Ark.), is attached as **Exhibit 2**.  That order grants an unopposed motion by the defendants in that case for the return of the entire settlement fund (less the claims administrator's fee and expenses), as "no eligible claims were filed" by members of the class. *Id.* at 1.

4.      A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Plaintiffs' Motion for Distribution of Class Settlement Fund and Incorporated Memorandum of Law, Dkt. No. 150, *In re Andrx Corp., Inc., Taztia XT Securities Litigation*, No. 02-60410-CIV (S.D. Fla. Feb. 23, 2006), together with the accompanying Affidavit of Anya Verkhovskaya-Cohen in Support of Distribution of the Net Settlement Fund (without accompanying exhibits), is attached as **Exhibit 3**.  According to the affidavit, two types of class notices were distributed in that case, of 4,008 and 10,107 in number, for a total of *14,115* estimated class members.  Verkhovskaya-Cohen Aff. ¶ 10.  According to the motion, claims were approved for *820* claimants.  Pls.' Mot. for Distrib. 4.  Thus, from these documents, the percentage of class members who submitted claims that were approved appears to be about **5.81%**.

5.      A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Affidavit of Anya Verkhovskaya in Support of Distribution of the Net Settlement Funds, Dkt. No. 1025, *In re Lernout & Hauspie Securities Litigation*, No. 1:00-cv-11589 (D. Mass. Mar. 6, 2007), is attached (without accompanying exhibits) as **Exhibit 4**. According to that affidavit, two types of class notices were distributed, of 99,381 and 100,205 in number, for a total of *199,586* estimated class members (*id.* ¶ 6), and 26,431 claim forms were received (*id.* ¶ 14).  A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Affidavit of Anya Verkhovskaya in Support of Plaintiffs' Supplemental

2

Memorandum in Compliance with This Court's September 4, 2007, Order and Amendments to the March 5, 2007, Affidavit of Anya Verkhovskaya in Support of Distribution of the Net Settlement Fund, Dkt. No. 1052, *Lernout & Hauspie* (Oct. 4, 2007), is attached (without accompanying exhibits) as **Exhibit 5**. According to the second affidavit, 14,499 of the submitted claims were rejected as invalid. *See id.* ¶ 18. This left a total of *11,932* valid claims. Thus, from these affidavits, the percentage of class members who submitted claims that were approved appears to be about **5.98%**.

6.      A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Affidavit of Anya Verkhovskaya, Dkt. No. 96, Ex. 1, *In re NX Networks Securities Litigation*, No. 1:00-cv-11850 (D. Mass. Aug. 30, 2006), is attached as **Exhibit 6**. According to that affidavit, a total of *19,831* Claim Packets were distributed. *Id.* ¶ 5. Of those, *932* claims forms were returned and found valid. *Id.* ¶ 22. Thus, from this affidavit, the percentage of class members who submitted claim forms that were approved appears to be about **4.70%**.

7.      A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Affidavit of Anya Verkhovskaya-Cohen, Dkt. No. 62, *In re Supervalu, Inc. Securities Litigation*, No. 02-cv-1738 (D. Minn. Feb. 21, 2006) is attached as **Exhibit 7**. According to the affidavit, a total of *97,720* Claim Packets were distributed. *Id.* ¶ 5. Of those, 10,240 claim forms were received (*id.* ¶ 8) and 7,137 claims were rejected (*id.* ¶ 24), leaving *3,103* valid claims. Thus, from this affidavit, the percentage of class members who submitted claim forms that were approved appears to be about **3.18%**.

8.      A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Affidavit of Anya Verkhovskaya, Dkt. No. 92, Ex. 2, *Friedman v. Rayovac Corp.*, No. 02-cv-0308 (W.D. Wis. July 28, 2008), is attached (without accompanying exhibits) as **Exhibit 8**. According to that affidavit, a total of *11,340* Claim Packets were distributed (*id.* ¶ 5), but only *588* forms were returned and found to be valid (*id.* ¶ 20). Thus, from this affidavit,

3

the percentage of class members who submitted claim forms that were approved appears to be about **5.19%**.

### Steven Fahlgren

9.     A true and correct copy (as provided in discovery in this case) of a letter from Kevin Coluccio, counsel to the plaintiffs, to Marjorie Walter, counsel to AT&T Mobility LLC, dated Aug. 18, 2008, is attached as **Exhibit 9**. According to that letter (*id*. at 2), Steven Fahlgren participated as counsel in the class action of *White v. E-Loan, Inc.* No. 05-cv-02080 (N.D. Cal).

10.     A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Joint Motion for Entry of Order of Final Approval of Settlement and Judgment, Dkt. No. 135, *White* (May 7, 2007), is attached as **Exhibit 10**. According to the proposed order attached as an exhibit to that motion, the class was estimated as *199,999* members. *Id*. Ex. B (Proposed Order of Final Approval of Settlement and Judgment), at ¶ 3. The declaration attached as an exhibit to the motion indicated that only *9,974* class members submitted valid claims forms. *Id*. Ex. A (Decl. of L. Stephens Tilghman), at ¶ 5. Thus, from these documents, the percentage of class members who submitted claims forms that were approved appears to be about **4.99%**. According to the proposed order, each class member received a $20 check and a free credit score (*id*. Ex. B, ¶ 11), for a total payment to the class of $199,480. The class counsel received fees and costs in the amount of $750,000. *Id*.

### Garden City Group

11.     A true and correct copy (as retrieved from Westlaw's CourtExpress service by an attorney under my supervision) of the Class Plaintiff's Status Report in Support of Final Approval of Class Action Settlement, *DeLoach v. Shaver Auto Center*, No. SCVSS 109026 (Cal. Super. Ct. San Bernardino Cty. Sept. 9, 2005), is attached (without accompanying exhibits) as **Exhibit 11**. According to that status report, the claims administrator mailed notices to one set of 30,422 class members and to another set of 341 class members, for a total of *30,763* notices. *Id*. at 1. A true and correct copy (as provided in discovery in this case) of the Garden City Group's

4

regularly kept business record concerning claims received in *DeLoach*, as of December 23, 2008, is attached as **Sealed Exhibit 1**. According to that record, only *207* claims were received, found valid, and paid. *Id.* at 1. Thus, from these documents, the percentage of class members who submitted claim forms that were approved appears to be about **0.67%**. In total, the class received $59,500 in coupons and $30,420 in cash, for a total of $89,920. *Id.* at 4. A true and correct copy (as provided in discovery in this case) of the Order Preliminarily Approving Settlement & Class Notice Program, *DeLoach* (June 9, 2005) is attached as **Exhibit 12**. The settlement agreement provided $175,000 in fees and costs for class counsel. *Id.* Ex. A (Settlement Agreement and Release) at 4.

12.    A true and correct copy (as provided in discovery in this case) of the Declaration of Jennifer M. Keough Regarding Class Notification and Claims Administration, *Gutierrez v. Center Chevrolet, Inc.*, No. SCVSS 136374 (Cal. Super. Ct. San Bernardino Cty. Aug. 28, 2007), is attached as **Exhibit 13**. According to that declaration, the claims administrator sent notices and claim forms to *581* members of the class. *Id.* ¶ 4. A true and correct copy (as provided in discovery in this case) of the Garden City Group's regularly kept business record concerning claims received in *Gutierrez*, as of December 19, 2008, is attached as **Sealed Exhibit 2**. The Garden City Group's records indicate that 44 claim forms were received, of which none were valid. *Id.* at 1. A true and correct copy (as provided in discovery in this case) of the Order Preliminarily Approving Settlement and Class Notice Program, *Gutierrez* (July 18, 2007), is attached as **Exhibit 14**. The settlement agreement provided for the class counsel to receive $30,000. *Id.* Ex. A (Stipulation of Settlement) at 9; *id.* Ex. B (Notice of Proposed Class Action Settlement and Settlement Hearing) at 4.

13.    A true and correct copy (as provided in discovery in this case) of the Garden City Group's regularly kept business record concerning claims received in *Luna v. Corona Cars, Inc.*, No. RIC 445675 (Cal. Super. Ct. Riverside Cty.), as of December 19, 2008, is attached as **Sealed Exhibit 3**. According to that record, the claims administrators mailed claim forms to *8,393* class

Declaration of Kevin Ranlett in Support of
Defendants' Amended Motion to Compel Arbitration

members. *Id.* at 1.  Of these, 59 claims were received, found valid, and paid.  *Id.*  Thus, from this document, the percentage of class members who submitted claim forms that were approved appears to be about **0.70%**.  Payments to class members totaled $5,310.  *Id.* at 7.  A true and correct copy (as provided in discovery in this case) of the Order Preliminarily Approving Settlement and Class Notice Program (Amended), *Luna* (July 19, 2007), is attached as **Exhibit 15**.  According to that order, class counsel received $30,000.  *Id.* Ex. A, at 10.

14.     A true and correct copy (as provided in discovery in this case) of the Declaration of Jennifer M. Keough Regarding Class Notice & Claims Administration, *Porter v. Sunrise Ford*, No. SCVSS 130980 (Cal. Super. Ct. San Bernardino Cty. Jan. 16, 2007), is attached (without accompanying exhibits) as **Exhibit 16**.  According to that declaration, claim forms were mailed to *14,635* class members.  *Id.* ¶ 3.  A true and correct copy (as provided in discovery in this case) of the Garden City Group's regularly kept business record concerning claims received in *Porter*, as of December 19, 2008, is attached as **Sealed Exhibit 4**.  According to that record, a total of *255* claims forms were received, found valid, and paid.  *Id.* at 1.  Thus, from these documents, the percentage of class members who submitted claim forms that were approved appears to be about **1.74%**.  Payments to class members totaled $12,750.  *Id.* at 10.  A true copy (as provided in discovery in this case) of the Order Preliminarily Approving Settlement and Class Notice Program, *Porter* (Nov. 21, 2006), is attached as **Exhibit 17**.  According to that order, class counsel in *Porter* received a total of $40,000.  *Id.* Ex. A (Stipulation of Settlement) at 9.

15.     A true and correct copy (as provided in discovery in this case) of the Declaration of Amanda L. Horn in Support of Motion for Final Approval of Class Action Settlement, *Trinidad v. Glendale Nissan/Infiniti Inc.*, No. BC323867 (Cal. Super. Ct. L.A. Cty. Nov. 8, 2007), is attached as **Exhibit 18**.  According to that declaration, claim forms were mailed to *6,966* class members.  *Id.* ¶ 4.  A true and correct copy (as provided in discovery in this case) of the Garden City Group's regularly kept business record concerning claims received in *Trinidad*,

6

as of December 18, 2008, is attached as **Sealed Exhibit 5**. According to that record, a total of *344* claims forms were received, found valid, and paid. *Id.* at 1. Thus, from these documents, the percentage of class members who submitted claim forms that were approved appears to be about **4.94%**.

### Gilardi & Co.

16.    A true and correct copy (as provided in discovery in this case) of the Declaration of Markham Sherwood re Dissemination of Notice and Report on Claims and Requests for Exclusion Received, *White v. Cellco Partnership*, No. RG04-137699 (Cal. Super. Ct. Alameda Cty. Oct. 20, 2008), is attached as **Exhibit 19**. According to that declaration, the claims administrator mailed a notice to *2,771,109* class members (*id.* ¶ 3) and received (as of six days after the postmark deadline) an estimated total of *154,992* filed claims (*id.* ¶ 9). The declaration does not state whether any claims were rejected. Thus, from this declaration, the percentage of class members who submitted claims that were approved appears to be no greater than about **5.59%**.

### Miscellaneous

17.    A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Declaration of Daniel Rosenthal re Predicted Participation of Consumer Settlement Class Members in Settlement Consideration, Dkt. No. 441, *Azizian v. Federated Department Stores, Inc.*, No. 3:03-cv-03359 (N.D. Cal. Mar. 8, 2005), is attached as **Exhibit 20**. According to that declaration, executed by the owner of class administrator Rosenthal & Co., LLC (*id.* ¶ 1), "approximately 3% to 7% of the entire consumer settlement class" likely would participate in the settlement of the action (*id.* ¶ 11). A true and correct copy (as retrieved from PACER by an attorney under my supervision) of the Final Judgment Granting Final Approval to the Class Action Settlement With All Defendants And Awarding Attorneys' Fees and Costs, Dkt. No. 447, *Azizian*, is attached (without accompanying exhibits) as **Exhibit 21**. According to that judgment, class counsel in *Azizian* were awarded $24 million in attorney's fees and costs. *See id.*

7

¶ 18.

18.    A table of the take rates—*i.e.*, the percentage of the class that participated in the settlements—in the above cases (with the exception of *Azizian*, in which the take rate was merely predicted, and *Date*, in which the proposed settlement was rejected) is attached as **Sealed Exhibit 6**. The median take rate in these cases was **4.70%**. The highest take rate in such cases was **5.98%**, and the lowest non-zero take rate was **0.67%**. In two cases, the take rate was **0%**, as not a single class member obtained the agreed-on recovery. More than two-thirds of these cases had take rates below **5%**.

19.    In other words, in two-thirds of these cases, at least **95%** of class members, or **nineteen out of twenty**, appear to have received no monetary or other individual compensation as a result of the class action settlement.

20.    If all of the cases listed above were considered as a single large class action, the class would have an estimated 3,375,038 members, of whom only 183,206, or **5.43%**, received any recovery. *See* Sealed Ex. 6. In other words, **94.57%** of all class members in these cases received no individual recovery from the class action settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 11, 2009 in Washington, DC.

Kevin Ranlett

Declaration of Kevin Ranlett in Support of
Defendants' Amended Motion to Compel Arbitration